UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x                    **Case No. 17-40104 (cec)**
                              :
IN RE:                                                       :
                              :
          PRIME SIX, INC.,                          :
                              :
              Debtor-in-Possession.  :
                              :           Chief Judge Carla E. Craig
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

 

**DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT IN
SUPPORT OF DEBTOR'S SECOND AMENDED
<u>CHAPTER 11 PLAN OF REORGANIZATION</u>**

 

Dated: February 12, 2018
      New York, New York

                                          **RANDALL S. D. JACOBS, PLLC**
                                          *Office and Post Office Address*
                                          **30 Wall Street, 8th Floor**
                                          **New York, New York 10005**
                                          **Tel.: (212) 709-8116**
                                          **Fax: (973) 226-8897**
                                          **[rsdjacobs@chapter11esq.com](mailto:rsdjacobs@chapter11esq.com)**
                                          *Attorneys for the Debtor*
                                              *and Debtor in Possession*

**TABLE OF CONTENTS**                                    Page

1.    **INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    -1-
      a.    Prime Six, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    -1-
      b.    The Chapter 11 Process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    -1-
      c.    Disclaimers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    -3-

2.    **HISTORY OF THE DEBTOR AND THE CHAPTER 11 CASE**. . . . . . . .    -4-
      a.    Description of the Debtor and History of Debtor's Business. . . . . . . . .    -4-
      b.    Management of the Debtor Before and During the
            Chapter 11 Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    -4-
      c.    Debtor's Sole Insider. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    -4-
      d.    Prior Chapter 11 Case.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    -5-
      e.    The Debtor Began Business as a Startup. . . . . . . . . . . . . . . . . . . . . .    -5-
      f.    Debtor's Performance.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    -5-
      g.    Events Leading to Current Chapter 11 Filing.. . . . . . . . . . . . . . . . . . .    -5-
      h.    The Debtor's Rejected Lease and Rent Arrears. . . . . . . . . . . . . . . . . .    -5-
      i.    History of the Debtor's Current Chapter 11 Filing. . . . . . . . . . . . . . .    -5-
      j.    NYS Sales Tax Liability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    -5-
      k.    IRS Income Tax Liabilities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    -6-
      l.    A Summary of the Debtor's Assets and liabilities. . . . . . . . . . . . . . . .    -6-

3.    **SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE.**. . . . . . . .    -6-
      a.    Filing of Statements and Schedules. . . . . . . . . . . . . . . . . . . . . . . . . .    -6-
      b.    Professionals Employed by the Debtor. . . . . . . . . . . . . . . . . . . . . . . .    -6-
      c.    Tax Claims filed by the NYSDOTF. . . . . . . . . . . . . . . . . . . . . . . . . . .    -7-
      d.    Tax Claims filed by the IRS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    -7-
      e.    Claims Process and Bar Date. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    -7-
      f.    Bar Dates for Filing Proofs of Claim. . . . . . . . . . . . . . . . . . . . . . . . .    -7-
      g.    The Debtor's Payment of Prepetition Rent and Assumption of the    Lease. . .
      h.    Filed Claims and the Claims Objections Process. . . . . . . . . . . . . . . . .    -8-
      i.    After Confirmation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    -8-

4.    **DESCRIPTION OF THE PLAN.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    -8-
      a.    Plan Overview. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    -8-

5.    **DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS**. . . . . . . .    -9-
      a.    The Classes of Claims and Interests under the Plan. . . . . . . . . . . . . . .    -9-
      b.    Impaired Claims or Classes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    -9-
      c.    Unclassified Administrative Claims. . . . . . . . . . . . . . . . . . . . . . . . . .    -9-

6.    **SUMMARY OF CLASSIFICATIONS** . . . . . . . . . . . . . . . . . . . . . . . . .    -9-
      a.    Bankruptcy Code § 1123(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    -10-

b.      Secured Claims - Taxes - Class 1(a) and 1(b). . . . . . . . . . . . . . . . . . . . -10-
           Class 1(c): Allowed Other NYC Secured Claims. . . . . . . . . . . -10-
c.      Priority Claims -Taxes - Class 2(a) and (b)  . . . . . . . . . . . . . . . . . . . . -10-
d.      Other Priority - NYC Priority Tax Payables . . . . . . . . . . . . . . . . . . . . . -11-
e.      General Unsecured Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-
           i.      Class 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-
f.      Equity Interests: Class 4: Common Stock . . . . . . . . . . . . . . . . . . . . . . . -12-

7.    **TREATMENT OF CLAIMS AND INTERESTS**. . . . . . . . . . . . . . . . . . . . -12-
a.      Unclassified Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-
b.      Procedures for Administrative Claims Not Allowed
           as of the Effective Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-
c.      Administrative Expense Claims of Professionals.  . . . . . . . . . . . . . . . . -12-
e.      Fees of the United States Trustee. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-
f.      Unimpaired Claims Cannot Vote.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-
g.      Treatment of Allowed Secured and/or Priority Claims. . . . . . . . . . . . -13-
           i.      Allowed Class 2 Priority Tax Claims. . . . . . . . . . . . . . . . . . . . -13-
h.      Impaired Unsecured Claims.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

8.    **PLAN SUMMARY TABLES**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

9.    **VOTING ON THE PLAN**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-
a.      Who May Vote.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -24-
b.      How to Vote.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -24-
c.      BALLOTS WITH ORIGINAL SIGNATURES.  . . . . . . . . . . . . . . . . . -24-

10.    **CONFIRMATION OF THE PLAN.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -24-
a.      Objections to Confirmation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -25-
b.      Hearing on Confirmation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -25-
c.      Estimation of Claims for Voting Purposes.  . . . . . . . . . . . . . . . . . . . . . -25-
d.      Estimation Under Code §502(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-
f.      Estimation Under Rule 3018. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-

11.    **MEANS FOR IMPLEMENTING THE PLAN**. . . . . . . . . . . . . . . . . . . . . -26-
a.      The Stockholder's Cash Contributions.  . . . . . . . . . . . . . . . . . . . . . . . . -26-
b.      Retention and Preservation of Causes of Action. . . . . . . . . . . . . . . . . . -26-
c.      Treatment of Executory Contracts and Unexpired Leases  . . . . . . . . . . -27-
d.      Parties to Executory Contracts or Unexpired Leases. . . . . . . . . . . . . . . -27-
           i.      Executory Contracts or Unexpired Leases. . . . . . . . . . . . . . . . . -27-
           ii.     Bar to Rejection Damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . -27-

|     |     | iii.  | Distributions. | -27- |
|     |     | iv.   | First Distribution Date. | -27- |
|     |     | v.    | De Minimis Distributions. | -28- |
|     |     | vi.   | Distribution Record Date. | -28- |
|     |     | vii.  | No Distributions Pending Allowance. | -28- |
|     | g.  | Setoffs. | | -29- |
|     | h.  | Procedure for Treating and Resolving Class 3 Contingent, Unliquidated or Disputed ("CUDS") Claims. | | -29- |
|     |     | i.    | Objection Deadline. | -29- |
|     | i.  | Releases, Injunction and Exculpation. | | -29- |
|     |     | i.    | Releases by the Debtor. | -29- |
|     | j.  | Injunction. | | -30- |
|     | k.  | Exculpation and Limitation of Liability. | | -30- |
|     | l.  | Term of Bankruptcy Injunction or Stays. | | -31- |
|     | m.  | Indemnification Obligations. | | -31- |
|     | n.  | Miscellaneous Matters. | | -31- |
|     |     | i.    | Final Fee Application of Professionals. | -31- |
|     | o.  | Conditions Precedent to Plan Effectiveness. | | -31- |
|     | p.  | Waiver of Conditions. | | -32- |

| 12. | **RISK FACTORS.** | | -32- |
|     | a.  | Summary. | -32- |
|     | b.  | Satisfaction of Conditions to Effective Date. | -32- |
|     | c.  | Voting Risks. | -32- |
|     | d.  | Objection Risks. | -32- |
|     | e.  | Risk of Loss of Lease. | -33- |

| 13. | **REQUIREMENTS FOR CONFIRMATION**. | | -33- |
|     | a.  | At the Confirmation Hearing, | -33- |
|     | b.  | Acceptances Necessary to Confirm Plan | -33- |
|     | c.  | Feasibility of Plan | -34- |
|     | d.  | Best Interest of Creditors Test. | -35- |
|     | e.  | Chapter 7 Liquidation. | -35- |
|     | f.  | Liquidation Analysis. | -35- |
|     | g.  | Classification. | -36- |
|     | h.  | Confirmation of Plan Without Necessary Acceptances. | -36- |
|     | i.  | No Unfair Discrimination. | -36- |
|     | j.  | Fair and Equitable Test. | -37- |
|     | k.  | The Rule of Absolute Priority. | -37- |

| 14. | **EFFECT OF CONFIRMATION.** | | -37- |

|  | a. | Binding Effect of Confirmation. | -37- |
|  | b. | Vesting of Assets Free and Clear of Liens, Claims and Interests. | -37- |
|  | c. | Good Faith. | -38- |
|  | d. | No Limitations on Effect of Confirmation. | -38- |
|  | e. | Section 1146 Exemption.. | -38- |

| 15. | **FEDERAL INCOME TAX CONSIDERATIONS.** | -38- |
|  | a. | Consummation of the Plan | -38- |

| 16. | **ALTERNATIVES TO THE PLAN**. | -38- |

| 17. | **CONCLUSION**. | -39- |

**EXHIBITS** [1]:

1. **The Amended Plan of Reorganization**

2. **Monthly Operating Reports from the Petition Date**

3. **Senser Appraisal of the Debtor's Used Restaurant Equipment and Comparable restaurant properties**

4. **Projected Sales and Earnings for 5 Years (2017 -2022)**

5. **Liquidation Analysis as of October 1, 2017**

6. **Post Confirmation Budget for 5 years**

7. **Summary of Operations from Petition Date to October 1, 2017**

8. **Estimated Cash Available to the Debtor as of Confirmation** Date

---

[1]    Note: Exhibits were filed with the Court separately and remain unchanged.

1.      **INTRODUCTION**.

a.      **Prime Six, Inc.,** debtor and debtor in possession (together, the "Debtor") in the above-captioned Chapter 11 Case filed on the Petition Date, January 11, 2017, submits this second amended disclosure statement, as it may be amended, (the "Disclosure Statement") to each known holder of a Claim or Interest in the Debtor for the purpose of soliciting acceptances of the Debtor's second amended Chapter 11 Plan of Reorganization dated February 12, 2018 as it may be amended (the "Plan")[2] and to enable Creditors to make an informed decision on voting on the Plan. A copy of the Plan is attached hereto as **Exhibit 1.** Any capitalized terms used in the Disclosure Statement but not defined herein shall have the meanings ascribed to them in the Plan. The Debtor strongly urges that each recipient carefully and completely review the contents of this Disclosure Statement and the Plan. Particular attention should be given to the provision of the Plan affecting or impairing the rights of each holder of a Claim or Interest.

b.      **The Chapter 11 Process.** Chapter 11 of the Bankruptcy Code contains numerous provisions, the general effect of which is to provide a debtor with "breathing space" within which to propose a restructuring of their obligations to third parties. The filing of a bankruptcy petition creates a bankruptcy "estate" comprising all of a debtor's property interests. Unless the Bankruptcy Court appoints a trustee for cause, a debtor in a chapter 11 case remains in possession and control of all its assets as a "debtor -in-possession" or "DIP."

i.      In a chapter 11 case, a debtor may continue to operate its business in the ordinary course on a day-to-day basis without Bankruptcy Court approval. Bankruptcy Court approval is only required for certain kinds of transactions, such as certain financing transactions, and transactions outside of the ordinary course of a debtor's business. The filing of the bankruptcy petition invokes what is known as the "automatic stay" which generally enjoins creditors from taking any action to collect or recover obligations owed by a debtor prior to the commencement of a chapter 11 case. The Bankruptcy Court, however, can grant relief from the automatic stay under certain specified conditions or for cause. The Bankruptcy Code authorizes the creation of one or more official committees to protect the interests of some or all creditors or interest holders. The fees and expenses of counsel and other Professionals employed by a debtor and approved by the Bankruptcy Court are generally borne by a bankruptcy estate. A chapter 11 debtor emerges from bankruptcy by successfully confirming a plan of reorganization. A plan may either be consensual or non-consensual and provides, among other things, for the treatment of the claims of creditors and interests of shareholders, if any.

---

[2]      The meanings of capitalized terms used in Plan are set forth in Section 2 thereof, any Exhibit to the Plan or to the Disclosure Statement, the Bankruptcy Code or the Bankruptcy Rules.

ii.     **THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUBMITTED BY THE DEBTOR, UNLESS SPECIFICALLY STATED TO BE FROM OTHER SOURCES. THE DEBTOR HAS NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING IT OR ITS FINANCIAL AFFAIRS, OTHER THAN THOSE SET FORTH HEREIN.**

iii.    The Plan is summarized below but all summaries are qualified by the terms of the Plan itself, which are in all instances controlling.

iv.     You may not rely upon this Disclosure Statement for any purpose other than to determine how to vote on the Plan. Nothing contained in the Plan or Disclosure Statement shall constitute an admission of any fact or liability by any party, or be admissible in any proceeding involving the Debtor or any other party.

v.      The statements contained in this Disclosure Statement are made as of the date hereof, unless another time is specified herein. Neither delivery of this Disclosure Statement nor any exchange of rights made in connection with the Disclosure Statement or the Plan shall under any circumstances create an implication that there has been a change in the facts set forth herein after the date the Disclosure Statement was prepared.

vi.     Although the Debtor believes that the contents of this Disclosure Statement are complete and accurate to the best of its knowledge, information and belief, the Debtor is unable to warrant or represent that the information contained herein is without any inaccuracy. THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN THE SUBJECT OF A CERTIFIED AUDIT.

vii.    After notice and a hearing held on November 1, 2017, and upon the request of the Debtor, the Court, pursuant to Section 1125 of the Bankruptcy Code, approved this Disclosure Statement as containing information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of Debtor and the condition of its books and records, that would enable a hypothetical reasonable investor, typical of the Debtor's creditors and shareholders, to make an informed judgment to vote to accept or reject the Plan. Approval of this Disclosure Statement by the Court does not, however, constitute a recommendation by the Court to accept or reject the Plan.

viii.   Accordingly, the Debtor believes that confirmation of the Plan is in the best Interests of creditors and they recommend that creditors vote to accept the Plan.

     ix.    The Bankruptcy Court's approval of the Disclosure Statement does not constitute an endorsement of the Plan, nor does it represent a guaranty of the completeness or accuracy of the information set forth herein. Your vote on the Plan is important. Without acceptance of the Plan, there may be protracted delays, the confirmation of another plan or liquidation under chapter 7 of the Bankruptcy Code. These alternatives are not likely to provide as large a distribution to holders of Allowed Claims as does the Plan. Accordingly, the Debtor urges you to accept the Plan by completing and returning the enclosed ballot(s) no later than _____ **2018 at 5:00 p.m.** prevailing Eastern Time.

    c.    **Disclaimers.** THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT. THE DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN. PLEASE READ THIS DOCUMENT WITH CARE. THE PURPOSE OF THE DISCLOSURE STATEMENT IS TO PROVIDE "ADEQUATE INFORMATION" OF A KIND, AND IN SUFFICIENT DETAIL, AS FAR AS IS REASONABLY PRACTICABLE IN LIGHT OF THE NATURE AND HISTORY OF THE DEBTOR, WHICH WOULD ENABLE A HYPOTHETICAL REASONABLE INVESTOR TYPICAL OF HOLDERS OF CLAIMS IN EACH CLASS TO MAKE AN INFORMED JUDGMENT ABOUT THE PLAN. SOLELY FOR CREDITORS' CONVENIENCE, THIS DISCLOSURE STATEMENT ONLY SUMMARIZES THE PLAN'S TERMS.

    i.    IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN ARE CONTROLLING. ALTHOUGH THE DEBTOR BELIEVES THE SUMMARIES IN THE DISCLOSURE STATEMENT ARE FAIR AND ACCURATE IN ALL MATERIAL RESPECTS, THE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN ITSELF. NO REPRESENTATIONS CONCERNING THE DEBTOR'S FINANCIAL CONDITION OR ANY ASPECT OF THE PLAN OTHER THAN AS SET FORTH IN THE DISCLOSURE STATEMENT ARE AUTHORIZED BY THE DEBTOR. YOU SHOULD NOT RELY ON ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE THAT ARE OTHER THAN AS CONTAINED IN OR INCLUDED WITH THIS DISCLOSURE STATEMENT. EXCEPT AS OTHERWISE NOTED, ALL FACTUAL INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTOR AND IS TRUE AND CORRECT BASED ON ITS REVIEW OF

ITS BOOKS AND RECORDS AND TO THE BEST OF ITS KNOWLEDGE, INFORMATION AND BELIEF.

ii. THE DEBTOR CANNOT AND DOES NOT WARRANT, HOWEVER, THAT THE FINANCIAL AND OTHER INFORMATION IS TRUE AND CORRECT IN ALL MATERIAL RESPECTS. THE CONTENTS OF THE DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS LEGAL OR BUSINESS ADVICE. EACH CREDITOR SHOULD CONSULT ITS OWN LEGAL COUNSEL AND ACCOUNTANT AS TO LEGAL OR OTHER MATTERS CONCERNING ITS CLAIM.

2.    **HISTORY OF THE DEBTOR AND THE CHAPTER 11 CASE**.

a.    **Description of the Debtor and History of Debtor's Business**. The Debtor is a corporation formed under the laws of the State of New York which operates a restaurant bar and grill d/b/a "Woodlands" at its sole, leased Premises located at 242 Flatbush Avenue, Brooklyn, NY 11217. The Premises is a nonresidential retail space leased from Fang Realty, LLC, from April 16, 2010, until "April 31" (sic), 2025. Beginning in December, 2014, the Debtor began substantial renovations to its rented raw space and in 2015 began doing business in its renovated Premises. The Lease permits the Debtor to operate its Business.

b.    **Management of the Debtor Before and During the Chapter 11 Case**. The sole insider of the Debtor as defined by § 101(31) of the Bankruptcy Code is Akiva Ofshtein. The Debtor's sole Equity Interest Holder, Akiva Ofshtein, Esq. (the "Stockholder") is also a practicing attorney and at the same time, is principal of several other businesses. Mr. Ofshtein had hired an apparently well qualified manager to conduct day to day affairs under his supervision. However, as it turned out, neither the first nor any of subsequent replacement managers were truly knowledgeable and capable of conducting the Debtor's day to day operations on an efficient and profitable basis. Their poor management of the Debtor's finances, expenses and oversight, led to accumulated Tax debts, defaults in the Debtor's payments to its landlord and accumulating debts to vendors. During the two years prior to the date on which the bankruptcy petition was filed, and during the pendency of the Debtor's chapter 11 case, Mr. Ofshtein was the sole officer and director of the Debtor. Various managers were employed by the Debtor for the two years prior to the filing of the petition. The Debtor's used restaurant equipment would provide little compensation to creditors in the event of a liquidation. **See Exhibit 5.** The only real value the Debtor has is its continued operation as funded by the Stockholder so that it can generate profits to pay its Secured, Priority and other Creditors.

c.    **Debtor's Sole Insider**. Mr. Ofshtein has been the principal officer, director and Stockholder of the Debtor during the pendency of this Chapter 11 case or during the two years prior to the commencement of the Debtor's bankruptcy case.

d.    **Prior Chapter 11 Case.** The Debtor filed a prior chapter 11 case, Number 15-42234 on May 20, 2015 which was dismissed on October 27, 2016. However, the Debtor failed to assume the Lease during the Prior Chapter 11 Case and it was therefore deemed rejected as a matter of law.

e.    **The Debtor Began Business as a Startup**. In 2012, after a two-year build-out and of refurbishment of raw space at the Premises, the Debtor began business operations. The Debtor has completely improved the Premises's ground floor, and basement with garage and backyard. The Restaurant currently employs approximately 26 full and part-time employees, most of which we have employed from inception years and is the primary source of income for virtually all of them.

f.    **Debtor's Performance**. In 2016, the Restaurant generated revenues of more than $2,310,046.00 and is running better than that in 2017. **See Exhibit 7**. Moreover while the slowest part of its seasonal business is January through March, the Debtor has already seen an upturn to profitability beginning in April of 2017 as has been shown on its Monthly Operating Reports, although most of such profits were directed to paying its Landlord all rent arrearages owed at least $225,000.00. **See Exhibit 2**: the Debtors 2017 Monthly Operating Reports.

g.    **Events Leading to Current Chapter 11 Filing**. The Debtor's filing for relief under Chapter 11 of the Bankruptcy Code was brought about by a several causes. The Debtor's Business is operating its restaurant, bar and grille through hired managers. Unfortunately, the prior managerial staff was unable to profitably and accurately operate the business notwithstanding its generation of substantial revenues.

h.    **The Debtor's Rejected Lease and Rent Arrears.** Pursuant to the Bankruptcy Code, before the Debtor's Prior Chapter 11 Case was dismissed, the Debtor was obligated to have assumed its Lease of the Premises; however, it failed to do so. As a matter of law, the Debtor was therefore deemed to have abandoned its Lease. At the same time, the Debtor fell behind in payment of its obligations, including rent owed to the Landlord while its Premises was being built and its Business was becoming established. The amount of rent arrears owed to the Landlord was $182,712.96 (comprised of $151,365.50 in rent with the remainder being "additional rent" according to the Lease) together with additional charges incurred since the Debtor filed its Prior Chapter 11 Case in 2015 in the amount of $43,763.56 including April 2017 rent, aggregating in all the sum of $226,676.52

i.    **History of the Debtor's Current Chapter 11 Filing.** On January 11, 2017 (the "Petition Date") the Debtor commenced the instant case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage affairs as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtor is current in its filing of Monthly Operating Reports with its next one due by September 20, 2017. No trustee or examiner has been appointed in this case.

j.    **NYS Sales Tax Liability**. The NYSDOTF had filed a Proof of Claim against the Debtor for Unpaid NYS Sales Taxes aggregating $424,338.87 of which $279,851.46 is Secured $144,497.41 is Priority Tax and $107,324.54 is Unsecured. This Claim also includes Secured prepetition penalties in the sum of $114,901.84 which the NYSDOTF has agreed to reclassify as Unsecured.

k.    **IRS Income Tax Liabilities.** The IRS has filed a Proof of Claim against the Debtor in the amount of $456,049.98 of which $342,076.64 is Secured and $92,201.45 is Priority and the remaining $21,771.89 is Unsecured.

l.    **A Summary of the Debtor's Assets and liabilities.** A Summary Schedule has been filed with the Bankruptcy Court. On the Petition Date, the Debtor Scheduled $47,417.00 in Assets and $1,456,131.28 in total liabilities on its other Schedules also filed with the Court. Those Assets consisted of the used restaurant Equipment which the Debtor believes would generate limited proceeds from a forced liquidation sale by a chapter 7 Trustee. Senser Appraisal Associates ("Senser") appraised the *fair market value sale* of the Debtor's Assets in its October 27, 2015 report concluding that could generate as much as $32,095.00 However, as is common knowledge, a forced liquidation sale of used restaurant Equipment by a chapter 7 Trustee, *not* in the ordinary course of business, would necessarily result in substantially less proceeds realized, which the Debtor estimates would be less than $10,000.[3] See **Exhibit 3**. The only real value of the Debtor's business resides in its continued profitable operation and growth; the Plan proposes to use virtually all of that profit to pay Secured and Priority Creditors before a small distribution to General Unsecured Creditors; conversely, little or no distribution would be likely in the event of a liquidation.

3.    **SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE.**

a.    **Filing of Statements and Schedules.** On the Petition Date, or shortly thereafter, the Debtor filed with the Bankruptcy Court its Schedules of Assets and Liabilities and Statements of Financial Affairs, which set forth, *inter alia*, pre-petition Claims against the Debtor based on the Debtor's books and records and the Debtor's assets, including all of its personal property. As set forth above, at this point, the Debtor's Leased Premises offers no financial value for Creditors. Each of the Claims is as numbered on the Claims Register maintained by the Clerk of the Court. Some of the Claims were also filed on the Creditor's Proof of Claim form claim against the Debtor. As of the date hereof, the amount claimed by the IRS is stated on Claim No. 12. The Debtor's only valuable assets[4] -

---

[3]    If the Debtor otherwise could sell the Assets outside of chapter 11 in the ordinary course of business, using the "market comparison" approach, the proceeds off a fair market value sale of the Debtor's Assets might approach the estimate.

[4]    On September 19, 2017, the Court approved the Debtor's Motion to Assume the Lease although prior to that date, it could not be considered and asset of the Estate in light of the Debtor's "deemed rejection" thereof by the Debtor's Prior Chapter 11 Case.

as listed on the Schedules are the unaffixed furniture and fixtures removable from the Premises and the kitchen and bar equipment (collectively, the Equipment). See **Exhibit 3.**

b.      **Professionals Employed by the Debtor.** On the Petition Date, the Debtor was represented by Randall S. D. Jacobs, PLLC in the Chapter 11 Case; an order approving his representation of the Debtor was entered on the docket [No. 30] on March 30, 2017. On the same date, the Debtor's application to retain its pre-Petition accounting firm of Denis L. Abramowitz, CPA , PLLC to provide accounting services in the Chapter 11 Case was also approved [Docket No. 31] due to its expertise in dealing with the NYSDOTF sales Taxes and IRS Tax claims in addition to its extensive experience as Chapter 11 accountant to restaurants.

c.      **Tax Claims filed by the NYSDOTF**. The Debtor has retained accountants, Abramowitz CPA, PLLC, with expertise in NYSDOTF Taxation and audits to review the determination of the amount of unpaid Taxes claimed owed to the NYSDOTF by the Debtor on a pre-Petition Claim basis. The NYSDOTF has filed Proofs of Claim in the amount of $424,338.87 of which $279,851.46 is Secured $144,497.41 is  Priority Tax and $29,897.54 is Unsecured. This represents the largest single Proof of Claim filed against the Debtor. However, the NYSDOTF has agreed to treat the penalty portion of $114,901.84 as Unsecured.

d.      **Tax Claims filed by the IRS**. The Debtor also tasked it Accountants, Abramowitz CPA, PLLC, to review the determination of the amount stated in the Proof of Claim for income Taxes claimed owed the IRS on a pre-Petition Claim basis. The IRS filed a Proof of Claim in the amount of $456,049.98 of which $342,076.64  is Secured and $92,201.45 is Priority and the remaining $21,771.89 is Unsecured.

e.      **Claims Process and Bar Date.** In a Chapter 11 case, pre-petition claims against a debtor are generally established either as a result of being listed in the debtor's schedules of assets and liabilities as not being contingent, unliquidated or disputed or through assertion by the creditor in a timely filed proof of claim. Claims asserted by creditors are then Either Allowed or Disallowed. If Allowed, a Claim will be recognized and treated pursuant to the Plan. If disallowed, the Creditor will have no right to obtain any recovery on or to otherwise enforce the Claim against the Debtor.

f.      **Bar Dates for Filing Proofs of Claim**. By its order dated February 13, 2017, the Bankruptcy Court granted the Debtor's Motion dated March 6, 2017 [Docket No. 19] setting March 20, 2017 as the Bar Date, the deadline for filing Proofs of Claim with the Bankruptcy Court for any non-governmental pre-petition Claims against the Debtor. A deadline to file Administrative Claims against the Debtor will be established under the Plan. The Bankruptcy Court directed the Debtor to submit Motions by November 10, 2017 setting (i) a Supplemental Bar date with respect to those Creditors whose Claims were added by the Debtor's Amended Schedules filed in October, 2017 and (ii) an Administrative Bar Date for Administrative Claims.

g.    **The Debtor's Payment of Prepetition Rent and Assumption of the Lease.** Upon the Landlord's Motion returnable April 4, 2017 seeking to lift the automatic stay, and force the Debtor to surrender its Premises, *etc.*, the parties subsequently negotiated and entered into a stipulation dated April 4, 2017 (the "Stipulation") permitting the Debtor Cure its prior default and rejection of the Lease and move to assume the Lease by payment of approximately $225,000 in rent arrears to the Landlord by August, 2017 (of which more than $106,000 was contributed directly by the Stockholder.) The Debtor made all of the Stipulated payments to the Landlord due as of August 2017 and on September 19, 2017 the Court approved its Motion to Assume the Lease. The Debtor believes that many of the improvements to the Premises it renovated are considered "fixtures" and the proporty of the Landlord. As such, the Debtor's principal asset value is not in its used Equipment, but in its continued profitable operation which will generate the profits with which to pay its Creditors over time.

h.    **Filed Claims and the Claims Objections Process.** The Debtor has preliminarily reviewed filed Claims. Prior to Confirmation the Debtor anticipates that it will object to Claims that are lacking in legal or factual merit, including those that (i) assert improper secured or priority status; (ii) are asserted in amounts in excess of the amounts actually owed; (iii) do not allege an enforceable legal obligation of any of the Debtor; (iv) include post-petition interest and other disallowable charges; or (v) are otherwise objectionable, such as duplicate claims, *etc.*

i.    **After Confirmation**. Objections to Claims will be made by the Debtor, who will also continue any objections to Claims commenced prior to Confirmation. For the purposes of this Disclosure Statement, the Debtor has estimated what it believes the liability will be to the Holders of Claims in each Class. However, the actual aggregate amount of Allowed Claims in any Class may ultimately differ significantly from the Debtor's estimates. Any variance from those estimates will affect projected distributions potentially resulting in a materially higher or lower distribution than currently projected.

4.    **DESCRIPTION OF THE PLAN**.

a.    **Plan Overview.** The Debtor believes the principal value of its business lies in its ability to generate profits and to grow its sales, rather than liquidation of its used restaurant Equipment or the attempted sale of its Lease in current market conditions. (**See Exhibit 3**). The Debtor has researched comparable restaurant locations in Brooklyn (copies attached to **Exhibit 3**) currently on the market and concluded that the Lease, if it could be sold or assigned, would generate little value to the Debtor or its creditors. Accordingly, the Plan provides for the Stockholder's Cash Contribution of a minimum of $60,000 ($10,000 for the value of the Debtor's used equipment and an estimated $50,000 minimum to pay towards the final Approved Fees of the Debtor's Professionals) together with the Stockholder's waiver of his annual salary for five years ($375,000) in exchange for his retention of his Equity Interest (in addition to having contributed more than $106,000 to the Debtor this year to enable the Debtor to assume its Lease). The net Cash remaining from the sale of inventory is estimated at $2,000. In addition, the Stockholder has agreed to advance approximately $60,000 to the Debtor (approximately

$10,000 per month ) to provide Cash for proposed Plan payments during those few seasonal months when the Debtor's profits have been historically insufficient. Upon reconciliation of outstanding Claims against the estate by the Debtor and its Professionals, the Reorganized Debtor will make Distributions to Allowed Creditors under the Plan in accordance with the rule of absolute priorities and the Bankruptcy Code. The Plan categorizes the Claims against the Debtor into distinct Classes. In accordance with the Bankruptcy Code, Administrative Claims are not classified. The Plan also provides that expenses incurred by the Debtor during the Chapter 11 Case will be paid in full (or as may otherwise be agreed by all parties) and specifies the manner in which holders of Allowed Claims in each Class will be treated. If there is any discrepancy between this description of the Plan's treatment of Creditors and that set forth in the Plan, the terms of the Plan are controlling.

**b.     THE PRINCIPAL PROVISIONS OF THE PLAN AS THEY RELATE TO THE TREATMENT OF CLASSES OF ALLOWED CLAIMS ARE SUMMARIZED BELOW. THE DISCUSSION OF THE PLAN THAT FOLLOWS CONSTITUTES A SUMMARY ONLY AND SHOULD NOT BE RELIED UPON FOR VOTING PURPOSES. YOU ARE URGED TO READ THE PLAN IN FULL IN EVALUATING WHETHER TO ACCEPT OR REJECT THE PLAN. IF ANY INCONSISTENCY EXISTS BETWEEN THIS SUMMARY AND THE PLAN, THE TERMS OF THE PLAN CONTROL. ALL CAPITALIZED TERMS NOT OTHERWISE DEFINED HAVE THE MEANINGS ASCRIBED TO THEM IN THE PLAN.**

**c.     THE PRINCIPAL PROVISIONS OF THE PLAN AS THEY RELATE TO THE TREATMENT OF CLASSES OF ALLOWED CLAIMS ARE SUMMARIZED BELOW. THE DISCUSSION OF THE PLAN THAT FOLLOWS CONSTITUTES A SUMMARY ONLY AND SHOULD NOT BE RELIED UPON FOR VOTING PURPOSES. YOU ARE URGED TO READ THE PLAN IN FULL IN EVALUATING WHETHER TO ACCEPT OR REJECT THE PLAN. IF ANY INCONSISTENCY EXISTS BETWEEN THIS SUMMARY AND THE PLAN, THE TERMS OF THE PLAN CONTROL. ALL CAPITALIZED TERMS NOT OTHERWISE DEFINED HAVE THE MEANINGS ASCRIBED TO THEM IN THE PLAN.**

5.     **DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS**.

a.     **The Classes of Claims and Interests under the Plan.** Unclassified Claims are excluded from the following Classes in accordance with Bankruptcy Code § 1123 (a)(1). A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that the Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied before the Effective Date or such other date as determined by the Debtor in its sole discretion.

b.     **Impaired Claims or Classes**. Under section 1124 of the Bankruptcy Code, a class of claims or interests is "impaired" unless the plan (1) does not alter the legal, equitable, or contractual rights of the holders or (2) irrespective of the holders' acceleration rights, the plan cures all defaults (other than those arising from the debtor's insolvency, the commencement of the case, or nonperformance of a non-monetary obligation), reinstates the maturity of the claims or interests in the class, compensates the Holders for actual damages incurred as a result of their reasonable reliance upon any acceleration rights, and does not otherwise alter their legal, equitable, or contractual rights.

c.     **Unclassified Administrative Claims**. These Claims have not been classified and are excluded from the following Classes in accordance with Bankruptcy Code §1123(a)(1). Costs and expenses of administration as defined in the Bankruptcy Code and as provided in Section 507(a)(2) of the Bankruptcy Code, applications for which are filed prior to the Effective Date as the same are Allowed, approved and ordered paid by the Bankruptcy Court, including Claims for fees and expenses by the Debtor's Professionals.

6.     **SUMMARY OF CLASSIFICATIONS**.

a.     **Bankruptcy Code § 1123(a)(1)**. In accordance with Bankruptcy Code § 1123(a)(1) all type of Claims and Equity Interests are placed in the Classes described in the table below for all purposes, including voting on, confirmation of, and distributions under, this Plan.

| CLASS | DESCRIPTION | TREATMENT | VOTING/NON |
|---|---|---|---|
| Class 1(a): | Secured IRS Tax Claims | Unimpaired | Non-voting. |
| Class 1(b): | Secured NYSDOTF Sales Tax | Unimpaired | Non-voting. |
| Class 1(c): | Secured NYC Admin. Trial | Unimpaired | Non-voting. |
| Class 1(d): | Fang Realty Secured Claim | Unimpaired | Non-voting |
| Class 2(a): | Priority IRS Tax Claim | Unimpaired | Non-voting |
| Class 2(b): | Priority NYSDOTF Sales Tax | Unimpaired | Non-voting |
| Class 2(c): | Priority NYC/NYS Tax Claims | Unimpaired | Non-voting |
| Class 3 | General Unsecured Claims | Impaired | Voting |
| Class 4: | Equity Interests | Unimpaired | Non-voting |

b.     **Secured Claims - Taxes**. Secured Claims for unpaid Taxes pursuant to Section 507(a)(8) of the Bankruptcy Code, as the same are Allowed, approved or ordered paid by the Bankruptcy Court pursuant to the Bankruptcy Code.

i.     **Class 1(a)**: **Allowed Secured Claims of the IRS** pursuant to Claim No. 12 in the amount of $342,076.64Class 1 is Unimpaired.

    ii.    **Class 1(b): Allowed Secured claims of NYSDOTF** pursuant to Claim No. 1 stating $279,851.46 as a Secured Tax Claim. The Debtor has agreed with NYSDOTF that $114,901.84 of the NYSDOTF Secured Claim representing prepetition penalties should be reclassified as Unsecured, commensurately reducing the NYSDOTF Secured Claim. Class 1 is Unimpaired.

    iii.    **Class 1(c): Allowed Other Secured Claims**. Secured Claim No. 8 for $17,192.85 was filed by the NYC Office of Administrative Trials and Hearings for prepetition unemployment contributions. If any other such Secured Claims, as such Claims existed on the date of the Petition in this case, as finally Allowed and approved by the Bankruptcy Court, and to the extent that such Claims are not greater than the value of the Debtor's assets which the Bankruptcy Court finds are valid security for such debts. The Debtor does not believe that there are any such claims in this Class.

    iv.    **Class 1(d): Allowed Secured Claims**. Class 1(d) consists only of the Allowed Secured Claim of Fang Realty, Inc. (Claim No. 11, which the Debtor has paid pursuant to Court Order). Class 1 is unimpaired.

    c.    **Priority Claims -Taxes**. Claims entitled to Priority which are Taxes and which are afforded a priority pursuant to Section 507(a)(8) of the Bankruptcy Code, as the same are Allowed, approved or ordered paid by the Bankruptcy Court pursuant to the Bankruptcy Code.

    i.    **Class 2(a): IRS Priority Tax Claim**. The IRS filed a Proof of Claim stating the amount of $92,201.45 as a Priority Tax Claim. Class 2 is unimpaired.

    ii.    **Class 2(b)**: **NYSDOTF** has filed a Proof of Claim stating $144,497.41 claimed as Priority Taxes. Class 2 is unimpaired.

    iii.    **Class 2(c)**: **Allowed Other Priority Claims.** The NYS Department of Labor, Unemployment Insurance Division, filed an Amended Proof of Claim (No. 3) asserting Priority Tax Claim for $76,025.15 in addition to a Claim of $16,752. Class 2 is unimpaired.

    d.    **Other Priority - Wages, Post-Petition Trade Payables and All Other Non-Tax Claims**, if any: Claims other than those of Professionals entitled to priority by Section 507 of the Bankruptcy Code, as the same are Allowed, approved or ordered paid by the Court.

    e.    **Unsecured Claims**: General

    i.    **Class 3: Allowed General Unsecured Claims (Without Priority)**. Allowed Unsecured Claims. Class 3 consists of Claims not cured, paid, released, or waived

pursuant to the Plan, assumed by the Debtor pursuant to the Plan or agreements incorporated in the Plan, or classified in any other Class of Claims, including, without limitation, (i) Claims for goods sold and services rendered, (ii) Claims for monies lent or deposited, (iii) Claims based upon guarantees of performance or payment of the obligations or duties of any Person, (iv) Claims for contribution, reimbursement or indemnity, (v) Claims for fines, penalties, or assessments, (vi) Claims for tort liability, (vii) Claims arising from the rejection of executory contracts and unexpired leases and (viii) and all Allowed Claims against the Debtor arising from any or related to any Interest in the Debtor, all Section 510(b) Claims with respect to such Interests. The Debtor believes that viable general Unsecured Claims aggregate $848,167.79 primarily owed to general Unsecured trade vendors and the to the IRS and NYSDOTF for the Unsecured portions of their respective Claims. Class 3 is impaired.

      f.     **Equity Interests: Common Stock**. Class 4 consists of the Claim of the sole Stockholder for 100% of the Debtor's Common Stock.

## 7.     TREATMENT OF CLAIMS AND INTERESTS.

      a.     **Unclassified Claims**. Unclassified Claims, which include Claims of the kind specified in Section 507(a)(2) (Administrative Expense Claims), Section 507(a)(8) of the Bankruptcy Code (Certain Taxes) and Priority non-Tax claims under Section 507 of the Bankruptcy Code, if any.

          i.     **Generally**. Subject to certain provisions contained in the Plan, and unless any Holder thereof agrees or has agreed to different or less favorable treatment, each Holder of an Allowed Administrative Claim that has not been satisfied during the Case will receive, on account of and in full satisfaction of such Allowed Administrative Claim, Cash equal to the allowed amount of such Claim on the latest of (i) the First Distribution Date, (ii) if disputed (or, in the case of an Administrative Claim owing to a Professional, not yet Allowed), as soon as practicable after entry of a Final Order Allowing the Administrative Claim, and (iii) the date on which the distribution to the holder of the Allowed Administrative Claim would have been due and payable in the ordinary course of business or under the terms of any agreement giving rise to the Allowed Administrative Claim.

      b.     **Procedures for Administrative Claims Not Allowed as of the Effective Date**. Notwithstanding any other provisions of the Plan, no payments or distributions will be made on account of Administrative Claims and Priority Tax Claims until such Claim becomes an Allowed Claim pursuant to Final Order, or unless an order of the Bankruptcy Court provides otherwise. The Confirmation Order shall specifically provide that each Administrative Expense Claimant, including Claimants seeking allowance of Professional Fees and Expenses, that fails to timely and duly file a request for payment of

its Administrative Claim by the Administrative Bar Date shall have its Claim expunged and shall thereafter be forever barred from asserting any such Administrative Claim.

     c.    **Administrative Expense Claims of Professionals**. Subject to the agreement of each Holder of an Allowed Administrative Claim, such Holder shall receive (a) Cash payment from the Debtor based on the Allowed Amount of their Administrative Claims and applied to the balance of such Holder's Allowed Administrative Claim.

           i.    After the Effective Date, the Reorganized Debtor shall bear the costs of any additional or other legal services and related expenses specifically requested of any of the Debtor's Professionals or otherwise required of them by law. Professional fees can be paid only after the Bankruptcy Court has granted a specific allowance of fees and expenses upon each Professional's application. Not later than sixty (60) days after the Effective Date, Professional Persons shall file applications for compensation for fees and expenses owed from the Filing Date through the Confirmation Date; if they have already filed applications for Professional Fees and Expenses through an earlier date, then not later than sixty (60) days after the Effective Date, they shall file final applications for services rendered through the Confirmation Date.

     d.    Except as otherwise provided in Section 2 of the Plan, or by the consent of such Person, each Person holding an Allowed Administrative Expense Claim as of the Confirmation Date shall be paid in full in Cash on the Effective Date unless they agree to accept other terms with the Debtor. In addition the Reorganized Debtor shall remain liable for payment in full of any unpaid but Court approved Professional Fees and Expenses set forth above and such additional Fees and Expenses incurred after the Effective Date.

     e.    **Fees of the United States Trustee.** The Debtor shall pay all United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6), plus interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtor's business, until the entry of a Final Order, dismissal of the Chapter 11 Case or conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code. Additionally, the Debtor shall file quarterly Post Confirmation Reports and schedule quarterly post-confirmation status conferences with the Court.

     f.    **Unimpaired Claims Cannot Vote.** Allowed Administrative, Priority Tax, Priority Non-Tax Claims and Secured Tax Claims are not impaired under the Plan, and thus such holders are not permitted to vote to accept or reject the Plan, since such holders are deemed to have voted in favor of the Plan pursuant to Section 1126(f) of the Bankruptcy Code. The Plan leaves unaltered the legal, equitable and contractual rights of holders of these Allowed Claims.

g.      **Allowed Class 4: Interests**. Holders of Class 4 Interests. On the Effective Date all Class 4 Interests shall continue to be held by the sole Stockholder and remain unaltered.

h.      **Treatment of Allowed Secured and/or Priority Claims**.

i.      **Allowed Class 1 Secured Claims.** Each Holder of each Allowed Class 1 Secured Claim shall be treated by payment of cash in full satisfaction of such Allowed Claim, including statutory interest, upon Confirmation in accordance with the provisions of Bankruptcy Code §1129(b)(2)(A)(i) or (iii) unless otherwise agreed with such Holder. The IRS and NYSDOTF have agreed that their respective Class 1 Secured Tax Claims shall be paid in full by the Debtor over 96 equal monthly payments of Cash (i) beginning as soon as is practicable but no later than 30 days after the Effective Date, (the "First Distribution Date") in full satisfaction of such Claims. Subject to the approval of the Bankruptcy Court, the Debtor has agreed to make monthly distributions on account of the IRS and NYSDOTF Secured and Priority Tax Claims, rather than quarterly payments, together with statutory interest as to the IRS's secured and Priority Tax Claims.

ii.     **Allowed Class 2 Priority Tax Claims.** Each Holder of each Allowed Class 2 Claim shall be treated by payment of cash in full satisfaction of such Allowed Claim, upon Confirmation, including statutory interest, in accordance with the provisions of Bankruptcy Code §1129(b)(2)(A)(i) or (iii) unless otherwise agreed with such Holder. The IRS and NYSDOTF have agreed that their respective Priority Tax Claims shall be paid by the Debtor over 96 equal monthly payments of Cash (i) beginning on or as soon as is practicable but no later than 30 days after the Effective Date, (the "First Distribution Date") together with agreed interest (no-post petition interest for the IRS's Priority Tax Claim), in full satisfaction of such Claims. The Debtor has agreed that the Debtor make monthly distributions to the IRS Secured and Priority Tax Claim rather than quarterly payments, subject to the approval of the Bankruptcy Court.

iii.    Only upon full payment of the Secured and Priority Tax Claims held by the IRS and NYSDOTF shall those Taxing Authorities issue releases of their respective liens against the Debtor's property and shall record such releases with the appropriate New York State governmental entity.

i.      **Impaired Unsecured Claims.**

i.      Allowed Unsecured Class 3: is Impaired and the Holders of Claims, if any, are entitled to vote on the Plan.

ii.   Class 3 is Impaired and the Holders of such Claims are entitled to vote on the Plan. Except to the extent that a Holder of an Allowed Class 3 Claim has been paid prior to the Distribution Date or agrees to a different treatment, the Debtor calculates it will pay an aggregate of approximately $29,005.50 to satisfy all of the Allowed Class 3 Claims which the Debtor intends to pay Cash in an amount equal to the a *pro rata* share of the profits earned annually on each (i) starting on the Effective Date or as soon as practicable after the later of (a) the First Distribution Date or (b) on the date the Claim becomes an Allowed General Unsecured Claim (ii) in five equal annual payments of approximately $5,801.09 over a period ending not later than five (5) years on the anniversary of the First Distribution Date together with interest at the federal funds rate of interest on the Effective Date unless the creditor shall agree to different treatment with the Debtor. All payments shall be applied first to principle and thereafter to interest, directly to such Allowed Holders from its earned profits from continued operations after payment of Secured and Priority quarterly Tax distributions.

iii.  If a Class 3 General Unsecured Disputed and Unliquidated Claim is not an Allowed Claim on a Distribution Date, the Holder of that Claim will receive its Distribution as soon as practicable after the Claim becomes an Allowed Claim.

iv.   Taxes "on or measured by income or gross receipts" as defined in detail by statute.

v.    Unsecured property Taxes assessed prior to the bankruptcy but last payable without penalty less than one year prior to the filing of the petition.

vi.   "A Tax required to be collected or withheld and for which the debtor is liable in whatever capacity."

vii.  Certain employment Taxes as defined in detail by statute.

viii. Certain excise Taxes as defined in detail by statute.

ix.   Certain customs duties as defined in detail by statute.

x.    Except as otherwise stated in the Plan or any order of the Court, treatment of the and the Administrative Claims Priority Tax Claims held by the NYSDOTF shall be treated similarly by being paid in full as are the NYSDOTF Secured Tax Claims.

xi.   Upon full payment of the Secured Tax Claims, the NYSDOTF shall release its lien against the Debtor's property and shall record such release with the appropriate New York State governmental entity.

xii. No Holder of an Allowed Class General Unsecured Claim shall receive interest on its Allowed Claim. Distributions to Holders of Allowed Unsecured Claims shall be made from net profits after Priority and Secured Claims are paid quarterly Plan distributions.

j.      Except as otherwise stated in the Plan or any order of the Court, the IRS, NYSDOTF, and NYC (collectively, the "Taxing Authorities") all Class 1 Secured Tax Claims shall be treated similarly to all Class 2 Priority Tax Claims and paid in full over the 96 months following the First Distribution Date, as set forth in detail in the Plan.

k.      Except to the extent that the Holder of a Secured or Priority Tax Claim has been paid prior to the Effective Date, agrees to a different treatment, or is treated in a different manner under the Plan, the Taxing Authorities holding Secured or Priority Tax Claims shall receive from the Debtor 96 equal monthly payments of Cash aggregating approximately $14,024.80 including 4% statutory interest as to the IRS and agreed 8% interest as to the NYSDOTF and NYC, (i) beginning on or as soon as is practicable but no later than 30 days after the Effective Date, (the First Distribution Date) in full satisfaction of such Claims.

l.      All Distributions to or on account of the Taxing Authorities Claims shall be in full satisfaction, settlement, release and discharge of, and in exchange for the NYSDOTF and IRS Claims.

m.      All Distributions to or on account of the NYSDOTF and IRS Claims shall be applied (i) first, to the NYSDOTF Administrative Claim, if any, (ii) second, to the Class 1 respective Secured Tax Claims and (iii) third, to the Class 2 Priority Claims.

n.      All Distributions to or on account of the Taxing Authorities' Claims shall first be applied to principal and thereafter to interest.

o.      Interest shall accrue on account of the NYSDOTF Claims at the rate of eight percent (8%) and as to the IRS Claim, under Section 511(b) of the Bankruptcy Code and Internal Revenue Code Section 6621 at four percent (4%) beginning on the Effective Date.

p.      Prepayment of all or any part of the amounts due on account of the Claims of the Taxing Authorities shall be permitted.

q.      Any and all such prepayments shall be applied first to principle and thereafter to interest to interest.

r.      Distributions to Holders of the NYSDOTF Sales Tax and IRS Claims shall be made by the Debtor.

s.    It shall be an event of default if the Debtor fails to make any payment to the Holder of any Allowed NYSDOTF Sales Tax, IRS Tax and NYC Tax Claims as provided in the Plan. Distributions to Holders of the IRS, NYSDOTF and City of New York Tax Claims other than the First Distribution Date or monthly [if authorized by the Court] Distributions thereafter shall be made by the Debtor.

t.    In the event of any such default under this Plan, the Allowed Holders of the IRS, NYSDOTF and NYC Tax Claims shall provide written notice to the Debtor and its counsel. Such notice shall, at a minimum (a) identify the nature of the default, (b) state the amount of the default, if any, (c) notify the Debtor of the last date upon which such default can be cured and (d) notify the Debtor that if such default is not cured, the Holders of the IRS, NYSDOTF and NYC Tax Claims may take action under appropriate non-bankruptcy law.

u.    Upon receipt of such written notice of default, the Debtor shall have a period of thirty (30) days from receipt of such notice to cure such default and during such thirty (30) days, the Holders of the NYSDOTF, IRS and NYC Tax Claims shall take no action against the Debtor. If such default is cured by the Debtor on or within said thirty (30) day period, then the Plan shall continue in full force and effect as if no default had occurred.

8.    **PLAN SUMMARY TABLES**.

a.    The following is a summary of the material provisions of the Plan and is qualified in its entirety by reference to the full text of the Plan and the definitions therein, a copy of which is attached hereto as **Exhibit** 1. As of August 31, 2017, the Debtor's records reflect little or no unpaid Administrative Claims, an aggregate of $630,120.95 of Secured Tax Claims, $329,466.03 of Priority Tax Claims, and $580,109.99 [5] of General Unsecured Claims timely filed by the Bar Date. The Scheduled Secured Claim for prepetition rent arrears filed by the Landlord has been paid in full pursuant to the Court's Order. Some of the Claims listed on the Schedules may be duplicative of the filed Claims and some Tax Claims may include uncollectible prepetition penalties; the Debtor has not yet fully reconciled those filed Claims with the Scheduled Claims.

b.    The following tables briefly summarize the treatment of Classes of Claims under the Plan. Amounts listed below are estimated. Actual Claims and distributions will vary depending upon the outcome of objections to Claims and the outcome of the review of the Debtor's New York State Sales Tax and IRS Tax Claims by the Debtor's Accountant. Pursuant to the rule of absolute priority, such Allowed Tax Claims may have Priority against Non-priority General Unsecured Claims to a majority of the Debtor's assets. However, the converse is also true: a review may result in a substantial decrease in the amount of Secured Taxes owed to the State of New York and the IRS which will commensurately

---

[5]    Including Penalties which the NYSDOTF has agreed with the Debtor to reclassify as Unsecured.

-17-

reduce the Debtor's payments thereof but may increase its Unsecured debt. In either event, the Debtor has agreed to repay the NYSDOTF and the IRS pursuant to the terms and conditions of the Code; or any superseding Agreement with the such creditors. At the same time, the Debtor reserves, at all times, the right to object or dispute the Tax amount and seek correction and/or adjustment of the Tax debt directly with the Taxing authority, through the Court or any other forum lawfully available to resolve any such disputes. Accordingly, the Secured and Priority Claims of the IRS (including IRS penalties), and the Secured and Priority Claims of the NYSDOTF (excluding penalties reclassified as Unsecured) pursuant to the Plan, the Debtor will pay 96 equal monthly payments to the Taxing Authorities of $14,024.80 including applicable 4% statutory interest as to the IRS, and 8% agreed interest as to the NYSDOTF, in addition to annual payment for five years in the amount of $5,801.09 aggregating $29,005.55, unless such Unsecured Creditors opt for a one-time payment of 2% or $11,602.18

c.      (These Class tables are only a summary of the classification and treatment of Claims under the Plan. The dollar estimates contained in this chart are as of September 1, 2017. Reference should be made to other sections of this Disclosure Statement and the Plan for a complete description of the classification and treatment of Claims.)

| UNCLASSIFIED | AMOUNT | |
|---|---|---|
| Designation: | Unknown $50,000 (Est.) | ADMINISTRATIVE and PROFESSIONAL FEE CLAIMS |
| Status: | | UNIMPAIRED |
| Voting Rights: | | NON-VOTING |
| Plan Treatment of Allowed Claims: | | |

d.      Administrative expenses are paid currently by the Debtor. The Debtor's unpaid Professional fees as of Confirmation are currently estimated to be at least $50,000. To the extent that the Court approves Professional fees, the Debtor has agreed to pay such approved fees for the Debtor's with any balance paid no later than 60 days after approval by the Court. Except as otherwise stated in the Plan or any order of the Court, allowed Administrative Claims held by the NYSDOTF or the IRS, if any, shall be shall be paid in full upon the Effective Date or First Distribution Date, whichever is later, in satisfaction, settlement, release and discharge thereof. The Holders of such Claims shall be paid Cash as soon as practicable on the date such Claim becomes an Allowed Claim, or such other treatment to which parties may agree. Interest paid to the IRS on any Allowed Claim shall be paid at the statutory rate.

| SECURED: | AMOUNT | CLAIMANT |
|---|---|---|
| Class 1(a): | $342,076.64 | IRS |
| Class 1(b): | $279,851.46 [6] | NYSDOTF |
| Class 1(c): | $18,142.85 | NYC OFFICE OF ADMIN. TRIALS ETC. |
| Class 1(d): | None known | FANG REALTY, INC. |
| Status: | | UNIMPAIRED |
| Voting Rights: | | NON-VOTING (Deemed accepted) |
| **Plan Treatment of Allowed Claims:** | | |

     e.     Except as otherwise stated in the Plan or any order of the Court, the IRS Class 1(a) Secured Tax Claims shall be treated similarly to IRS Class 1(b) Priority Tax Claims held by the IRS.

     f.     Except to the extent that the Holder of the IRS Secured or Priority Tax Claim has been paid prior to the Effective Date, agrees to a different treatment, or is treated in a different manner under the Plan, the Holder of the IRS Secured or Priority Tax Claim shall receive from the Debtor 96 equal monthly payments of Cash in the amount of approximately $14,024.80 including interest (i) on or as soon as is practicable but no later than 30 days after the Effective Date, (the First Distribution Date) and (ii) similar payments each month after the Effective Date of the Plan for 95 following consecutive months in full satisfaction of such Claims.

     g.     All Distributions to or on account of the NYSDOTF and IRS Claims shall be in full satisfaction, settlement, release and discharge of, and in exchange for the NYSDOTF and IRS Claims.

     h.     All Distributions to or on account the NYSDOTF and IRS Claims shall be applied (i) first, to the NYSDOTF Administrative Claim, (ii) second, to the IRS and NYSDOTF Secured Claims, and (iii) third, to the Priority Tax Claims.

     i.     All Distributions to or on account of the NYSDOTF and IRS Claims shall first be applied to principle and thereafter to interest.

     j.     Interest shall accrue on account of the NYSDOTF and IRS Claims at the rate applicable under Section 511(b) of the Bankruptcy Code on the Effective Date, which as to the IRS, is the statutory rate.

---

[6]     The NYSDOTF Secured Tax Claim was reduced by reclassification of penalties to Unsecured thereby reducing its Allowed Secured Claim to $279,851.46

k.      Prepayment of all or any part of the amounts due on account of the NYSDOTF Claims shall be permitted.

l.      Any and all such prepayments shall be applied first to principle and thereafter to interest to interest.

m.      Deleted.

n.      Deleted.

o.      It shall be an event of default if the Debtor fails to make any payment to the Holder of the Allowed NYSDOTF Sales Tax and IRS Secured Claims as provided in the Plan.

p.      In the event of any such default under this Plan, the Allowed Holders of the IRS Secured and NYSDOTF Claims shall provide written notice to the Debtor and its counsel. Such notice shall, at a minimum (a) identify the nature of the default, (b) state the amount of the default, if any, (c) notify the Debtor of the last date upon which such default can be cured and (d) notify the Debtor that if such default is not cured, the Holders of the IRS Secured and NYSDOTF Claims may take action under appropriate non-bankruptcy law.

q.      Upon receipt of such written notice of default, the Debtor shall have a period of thirty (30) days from receipt of such notice to cure such default and during such thirty (30) days, the Holders of the NYSDOTF and IRS Claims shall take no action against the Debtor. If such default is cured by the Debtor on or within said thirty (30) day period, then the Plan shall continue in full force and effect as if no default had occurred.

| CLASS 2: PRIORITY TAXES | AMOUNT | CLAIMANT |
|---|---|---|
| Class 2(a): | $92,201.45 | IRS |
| Class 2(b): | $144,725.35 | NYSDOTF |
| Class 2(c): | $16,752.12 | NYC DEP'T. FINANCE |
| | $76,025.05 | NYS DEP'T. LABOR |
| Status: | | UNIMPAIRED |
| Voting Rights: | | NON-VOTING (Deemed Accepted) |
| Plan Treatment of Allowed Claims: | | |

r.      Except to the extent that a Holder of an Allowed Class 2(a), 2(b) or 2(c) Priority Tax has been paid prior to the First Distribution Date or agrees to a different treatment, on or as soon as is

practicable after the First Distribution Date, each Holder of an Allowed Class 2 Priority Tax Claim shall receive, from the Debtor, Cash in an amount equal to the Amount of its Allowed Priority Tax Claim or, at the sole and exclusive option of the Debtor (i) on the Effective Date or as soon as practicable after the later of (a) the Effective Date or the First Distribution Date or (b) the date the Claim becomes an Allowed Priority Tax Claim, (ii) 96 equal monthly payments, beginning on the First Distribution Date and continuing over a period ending not later than eight (8) years thereafter until paid, together with interest at the agreed rate of eight percent (8%) per annum with respect to the NYSDOTF and the Federal Funds rate of 4% with respect to the IRS, or (iii) as may be otherwise agreed between the Debtor (or either of them, or a third party) and the Holder of each Allowed Priority Tax Claim, if any.

s.      It shall be an event of default under the Plan if the Debtor (x) fails to make any payment to the Holder of an Allowed Class 2 Priority Tax Claim as provided in the Plan, (y) if the Debtor fails to pay any post-confirmation Tax liabilities owing to the Holder of the Class 2 Priority Tax Claim or (z) if the Debtor fails to file post-confirmation Tax returns by the due date of the return or of any extension of time permitted under title 26, U.S. Code.

t.      In the event of any such default under this Plan, the Holder of the Class 2 Allowed Priority Tax Claim shall provide written notice to the Debtor and its counsel. Such notice shall, at a minimum (a) identify the nature of the default, (b) state the amount of the default, if any, (c) notify the Debtor of the last date upon which such default can be cured and (d) notify the Debtor that in the event of such default, the Holder of a Class 2 Allowed Priority Tax Claim may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue owing to it without further order of the Court through the administrative collection provisions of the title 26, U.S. Code.

u.      Upon receipt of such written notice of default, the Debtor shall have a period of thirty (30) days from receipt of such notice to cure such default and during such thirty (30) days, the Holder of a Class 2 Allowed Priority Tax Claim shall take no action against the Debtor. If such default is cured by the Debtor on or within said thirty (30) day period, then the Plan shall continue in full force and effect as if no default had occurred.

v.      If the Debtor fails to cure such default on or within said thirty (30) day period, then the Holder of a Class 2 Allowed Priority Tax Claim may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code to permit the Holder of a Class 1(a) Allowed Secured Tax Claim to collect any unpaid Taxes.

w.      Except as may be otherwise agreed between the Debtor and Holders of such Claims (including Unsecured Claims of the Taxing Authorities and the NYSDOTF resulting from reclassification of its Secured prepetition penalties), the Holder of an Allowed Class 3 Claim (the "Class 3 Claims") will receive on or as soon as is practicable after the Effective Date, from the Debtor, *pro rata*, to each Holder of an Allowed General Unsecured Claim, Cash in an amount equal to one percent (1%) of the Face Amount of such Allowed Unsecured Class 3 Claim payable annually on the anniversary of the Effective date for a total

of five (5) payments of 1% ($5,801.09) aggregating a maximum of 5% (or $29,005.50), unless the Holders of such Allowed Class 3 Claim agrees in writing to accept a *pro rata* share of a one-time Cash Payment equal to Two percent (2%) or $11,602.18 of the Face Amount of such Allowed Unsecured Claim within 30 days of the electing such payment in writing delivered to the Debtor in lieu thereof. Either of such Payment options will be in full satisfaction, settlement, release and discharge of, and in exchange for the Allowed Class 3 Claims.

x.      Distributions to the Holder of the Allowed Class 3 Claim shall be made by the Debtor. It shall be an event of default solely under this if the Debtor (x) fails to make any payment to the Holder of the Class 3 Claim as agreed with such Holder, (y) fails to pay any post-confirmation Pro Rata payment owing to the Holder of the Allowed Class 3 Claim as agreed with such Holder, or (z) fails to file post-confirmation Tax returns by the due date of the return or of any extension of time permitted under title 26 U.S. Code.

y.      In the event of any such default under this Plan, the Holder of the Class 3 Allowed Claim shall provide written notice to the Debtor and its counsel. Such notice shall, at a minimum(a) identify the nature of the default, (b) state the amount of the default, if any, (c) notify the Debtor of the last date upon which such default can be cured.

z.      Upon receipt of such written notice of default, the Debtor shall have a period of thirty (30) days from receipt of such notice to cure such default and during such thirty (30) days, the Holder of a Class 3 Allowed Claim shall take no action against the Debtor.

aa.     If such default is cured by the Debtor on or within said thirty (30) day period, then the Plan shall continue in full force and effect as if no default had occurred.

bb.     If the Debtor fails to cure such default on or within said thirty (30) day period, then the Holder of an Allowed Class 3 Claim may collect any unpaid liabilities from the Debtor; in the case of such uncured default, the automatic stay of 11 USC 362(a) is lifted solely to permit the Holder of an Allowed Class 43General Unsecured Claim to collect any unpaid Claims owing to it without further order of the Court.

| GENERAL UNSECURED Class 3: | AMOUNT | CLAIMANT |
|---|---|---|
| | 364,235.09 | TRADE CREDITORS |
| | $107,324.54 | NYSDOTF, |
| | $21,771.89 | IRS Taxes and |
| | $950.00 | other Unsecured Claims |
| Status: | | IMPAIRED |
| Voting Rights: | | VOTING |

| Plan Treatment of Allowed Claims: | | |
|---|---|---|

cc.    Except as may be otherwise agreed between the Debtor and Holders of such Claims (including Unsecured Claims of the IRS and NYSDOTF resulting from reclassification of prepetition penalties), the Holder of an Allowed Class 3 Claims will receive on or as soon as is practicable after the First Distribution Date, from the Debtor, *pro rata*, to each Holder of an Allowed General Unsecured Claim, Cash in an amount equal to one percent (1%) of the Face Amount of such Allowed Unsecured Class 3 Claim payable annually on the anniversary of the Effective date for a total of five (5) payments of 1% ($5,801.09) aggregating a maximum of 5% (or $27,510.65) unless the Holders of such Allowed Class 3 Claim agrees in writing delivered to the Debtor to accept a *pro rata* share of a one-time Cash Payment equal to Two percent (2%) or $11,602.18 of the Face Amount of such Allowed Unsecured Claim within 30 days of the First Distribution Date in lieu thereof. Either of such Payment options will be in full satisfaction, settlement, release and discharge of, and in exchange for the Allowed Class 3 Claims.

dd.    Distributions to the Holder of the Allowed Class 3 Claim shall be made by the Debtor. It shall be an event of default solely under this if the Debtor (x) fails to make any payment to the Holder of the Class 3 Claim as agreed with such Holder, (y) fails to pay any post-confirmation Pro Rata payment owing to the Holder of the Allowed Class 3 Claim as agreed with such Holder, or (z) fails to file post-confirmation Tax returns by the due date of the return or of any extension of time permitted under title 26 U.S. Code.

ee.    In the event of any such default under this Plan, the Holder of the Class 3 Allowed Claim shall provide written notice to the Debtor and its counsel. Such notice shall, at a minimum(a) identify the nature of the default, (b) state the amount of the default, if any, (c) notify the Debtor of the last date upon which such default can be cured.

ff.    Upon receipt of such written notice of default, the Debtor shall have a period of thirty (30) days from receipt of such notice to cure such default and during such thirty (30) days, the Holder of a Class 3 Allowed Claim shall take no action against the Debtor.

gg.    If such default is cured by the Debtor on or within said thirty (30) day period, then the Plan shall continue in full force and effect as if no default had occurred.

hh.    If the Debtor fails to cure such default on or within said thirty (30) day period, then the Holder of an Allowed Class 3 Claim may collect any unpaid liabilities from the Debtor; in the case of such uncured default, the automatic stay of 11 USC 362(a) is lifted solely to permit the Holder of an Allowed Class 43General Unsecured Claim to collect any unpaid Claims owing to it without further order of the Court.

| Class | Description | | Treatment | STATUS |
|---|---|---|---|---|
| **Class 4:** | **Equity Interest Holder** | **The sole Equity Interest Holder of the Debtor** | **This Holder will retain his Equity Interests after Confirmation on account of New Capital Contribution.** | **Non-voting Deemed to accept** |

ii.      The Plan provides for the Stockholder's Cash Contribution of a minimum of (i) $60,000 ($10,000 for the value of the Debtor's used equipment Cash proceeds from inventory sales on the day prior to the Effective Date and (ii) an estimated $50,000 minimum to pay for the Fees of the Debtor's Professionals as approved by the Court) and as may be agreed with the Professionals, together with (iii) the Stockholder's waiver of his annual salary for five years ($375,000) and provision of up to $10,000 during any seasonally slow month to enable the Debtor to make its Plan payments, in exchange for his retention of his Equity Interest. The net Cash remaining from the sale of inventory is estimated at $2,000. Upon reconciliation of outstanding Claims against the estate by the Debtor and its Professionals, and the making of Distributions to Allowed Creditors under the Plan in accordance with the rule of absolute priorities and the Bankruptcy Code. The Plan categorizes the Claims against the Debtor into distinct Classes. In accordance with the Bankruptcy Code, Administrative Claims are not classified. The Plan also provides that expenses incurred by the Debtor during the Chapter 11 Case will be paid in full (or as may otherwise be agreed by all parties) and specifies the manner in which holders of Allowed Claims in each Class will be treated. If there is any discrepancy between this description of the Plan's treatment of Creditors and that set forth in the Plan, the terms of the Plan are controlling.

9.      **VOTING ON THE PLAN**.

a.      **Who May Vote**. The Plan divides Allowed Claims into Classes. Under the Bankruptcy Code, only classes that are "impaired" are entitled to vote (unless the class receives no compensation or payment, in which event the class is conclusively deemed to have rejected the Plan). A class is impaired if the legal, equitable, or contractual rights attaching to the claims of the class are modified, other than by curing defaults and reinstating maturities. Under the Plan, Administrative, Priority Tax Claims and Equity Interests are unclassified and are not entitled to vote. Classes 1, 2, and 4 are unimpaired and conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Classes 3 is impaired and, therefore, is the only Class of Creditors entitled to vote.

b.      **How to Vote.** A form of Ballot is being provided to the members of Class of Class 3 by which Creditors in those Classes may vote to either accept or reject the Plan. To vote on the Plan, please complete the enclosed Ballots by (1) indicating that you either accept or reject the Plan and (2) signing your name and mailing the Ballot.

c.      **BALLOTS WITH ORIGINAL SIGNATURES. (NOT COPIES, FAXES OR EMAILS) MUST BE COMPLETED, SIGNED AND MAILED SO AS TO BE RECEIVED**

**BY DEBTOR'S COUNSEL NO LATER THAN 5:00 P.M. EASTERN TIME ON MARCH 1, 2017 AT THE FOLLOWING ADDRESS OR THEY WILL NOT BE COUNTED**:

> Randall S. D. Jacobs, PLLC
> *Attorney for Debtor Prime Six, Inc.*
> Attn: Randall S. D. Jacobs, Esq.
> 30 Wall Street, 8th Floor
> New York, New York 10005

      d.     **IF YOUR BALLOT IS NOT PROPERLY COMPLETED, SIGNED AND RECEIVED AS DESCRIBED, IT WILL NOT BE COUNTED.**

      e.     **ANY SIGNED BALLOT RETURNED WITHOUT ANY INDICATION THAT THE VOTING CREDITOR ACCEPTS OR REJECTS THE PLAN WILL BE DEEMED A BALLOT ACCEPTING THE PLAN. ANY SIGNED BALLOT RETURNED WITHOUT AN AMOUNT WILL BE DEEMED IN THE AMOUNT SET FORTH ON THE DEBTOR'S SCHEDULES.**

      f.     **IF YOUR BALLOT IS DAMAGED OR LOST, YOU MAY REQUEST A REPLACEMENT BY ADDRESSING A WRITTEN REQUEST TO COUNSEL FOR THE DEBTOR.**

**10.**    **CONFIRMATION OF THE PLAN**.

      a.     **Objections to Confirmation**. Any objections to confirmation of the Plan must be in writing and must be filed with the Bankruptcy Court and served on the Debtor and its counsel listed below so that such objections so as to be *received* on or before March 1, 2017:

> **Counsel for the Debtor**:
> Randall S. D. Jacobs, PLLC
> c/o Randall S. D. Jacobs, Esq,
> 30 Wall Street, 8th Floor,
> New York, New York 10005
> Tel: (212) 709-8116   Fax: 973 226 8897.
> Email: rsdjacobs@chapter11esq.com

> **The Debtor**:
> Prime Six, Inc.
> c/o Akiva Ofshtein, Esq., President
> 15 Bay 29th Street
> Brooklyn NY 11214

b. **Hearing on Confirmation**. The Bankruptcy Court has set ==_ , 2018 at ____== **p.m.** for a hearing (the "Confirmation Hearing") to determine whether the requisite number of Creditors has accepted the Plan and whether the other requirements for confirmation of the Plan have been satisfied. The Confirmation Hearing will be held at the United States Bankruptcy Court, Eastern District of New York, 271 Cadman Plaza East, Courtroom 3529, Brooklyn, NY 11201-1800 before the Honorable Carla E. Craig, C.U.S.B.J. The Confirmation Hearing may be continued from time to time and day to day without further notice. If the Bankruptcy Court confirms the Plan, it will enter the Confirmation Order.

c. **Estimation of Claims for Voting Purposes**. Bankruptcy courts have the power to estimate claims of creditors in cases under §502(c), title 11, chapter 11 of the Bankruptcy Code for purposes of allowance, and under Rule 3018 of the Rules for temporary allowance for purposes of voting on a plan of reorganization.

       i. The Code and Rules are silent regarding, among other things, the sufficiency of evidence and burden of proof necessary to estimate a claim; the appropriate discovery period; and whether following estimation a full litigation of the claim is appropriate to protect the due process rights of the claimant. There also is no rule limiting a Bankruptcy Court's authority as to the type of claim to be estimated, such that claims requiring a jury trial or class action claims, or claims for which relief from the automatic stay may have been granted, may be subject to estimation.

d. **Estimation Under Code §502(c).** Under Code §502(c), a Bankruptcy Court must estimate any claim for allowance purposes that is (i) contingent or unliquidated, the liquidation of which would "unduly delay" the administration of the bankruptcy case, or (ii) a right to payment based upon an equitable remedy for breach of performance.

e. Unless an objection is filed under Rule 3018, the Debtor will treat disputed, contingent, unliquidated Claims as having a value of $1.00 (One Dollar) solely for voting purposes on the Plan of Reorganization.

f. **Estimation Under Rule 3018.** A Bankruptcy Court may estimate a claim that has been objected to for the limited purpose of voting on a plan of reorganization. Objections to claims may be filed prior to or after confirmation of a plan. If filed prior to confirmation of a plan, unless by agreement or court order, a claimant that is the recipient of an objection may be barred from voting its claim or having its vote count.

11. **MEANS FOR IMPLEMENTING THE PLAN**.

a. **The Stockholder's Cash Contributions**. Based the Senser equipment appraisal (**See Exhibit 3**) and current market condition for restaurant leases, the Debtor believes that a forced liquidation of the Debtor's Business assets will result in little or no distribution to Creditors. Therefore,

in order for the Debtor's Plan to be implemented, the Stockholder will make a Contribution to the Debtor equal to 100% of the forced liquidation value of all of the Debtor's Equipment and Inventory (at least $10,000 plus Cash on hand on the day before the Effective Date estimated at $2,000). The Cash Contributed by its Stockholder will at least equal the forced liquidation value of all of the Debtor's Assets (its Equipment, furniture, fixtures, *etc.*), as appraised by Senser Appraisal Associates' report dated October 27, 2015 (See **Exhibit 4** attached hereto), together with any net Cash remaining in the Debtor's bank or Premises from liquidation of its Inventory, to the Debtor. In addition, the Stockholder will remain personally liable for payment of those Tax Claims not otherwise paid in monthly/quarterly installments by the Debtor, pursuant to the priorities established by Bankruptcy law: *i.e.*, Administration Expenses, Allowed Priority Non-Tax Claims, General Unsecured Claims which obtain a judgment against the Debtor. (See **Exhibit 5** attached hereto.) To that end, on or about November 6, 3017, the Stockholder's 2016 IRS Tax refund in the sum of $19,575.00 was applied to reduce the Debtor's remaining unpaid IRS Taxes. Finally, the Stockholder has agreed to contribute an additional amount to the Debtor, on a monthly basis, of approximately $10,000.00 to be used in the event the Debtor needs additional funds up to that amount monthly during seasonal low profit months, in order to complete any monthly plan distributions beginning on the First Distribution Date. Upon condition, that the Stockholder Contributes the abovementioned Cash, remains personally liable for all unpaid Tax Claims, and waives payment and contributes the reasonable value of his annual services as President estimated for five years, at no less than $75,000 per year (or an aggregate of $375,000) to be rendered to the Debtor without salary, the Stockholder shall retain his Equity Interest in the Reorganized Debtor and the Debtor shall be relieved of all liability for such claims or judgments, including the legal defense thereof, arising therefrom upon payment therefore in full.

      b.      **Retention and Preservation of Causes of Action**. In accordance with section 1123(b)(3) of the Bankruptcy Code and except as may otherwise be provided by order of this Court, the Debtor and its Estate shall retain all of defenses arising under applicable state laws, including, without limitation, preference and fraudulent transfer claims, if any, and all other causes of action of a trustee and debtors in possession (the "Defenses") under the Bankruptcy Code or other federal or state law.

      c.      **Treatment of Executory Contracts and Unexpired Leases**. Assumed or Rejected Contracts and Leases. Except as otherwise provided in the Confirmation Order or the Plan, the Confirmation Order shall constitute an order under section 365 of the Bankruptcy Code assuming all prepetition executory contracts and unexpired leases to which the Debtor is a party, to the extent such contracts or leases are executory contracts or unexpired leases, on and subject to the occurrence of the Effective Date, unless such contract or lease (a) previously shall have been assumed, assumed and assigned, or rejected by the Debtor, (b) previously shall have expired or terminated pursuant to its own terms before the Effective Date, or (c) is the subject of a pending motion to assume or reject on the Confirmation Date.

      d.      **Parties to Executory Contracts or Unexpired Leases**.

i. **Executory Contracts or Unexpired Leases.** Parties to such contracts or leases that are assumed by Debtor by the Effective Date of this chapter 11 case will be paid according to the terms of the contracts or leases or by the terms of any orders of the Court approving the assumption of the contracts or leases, or as the parties to the contracts or leases shall otherwise agree. Parties to rejected executory contracts or unexpired leases, if any, pursuant to the orders of the Bankruptcy Court will have Unsecured "rejection" Claims falling within Class 3.

e. **Bar to Rejection Damages**. If the rejection of an executory contract or unexpired lease gives rise to a Claim by the other party or parties to the contract or lease, the Claim shall be forever barred and shall not be enforceable against the Debtor (in such capacity) Assets unless a Proof of Claim is filed and served on the Debtor within thirty (30) days after service of a notice of the Effective Date or such other date as is prescribed by the Bankruptcy Court.

f. **Distributions**.

i. First Distribution Date. The Distribution Date is the date upon which initial distributions are made by the Disbursing Agent to Holders of Allowed Claims entitled to receive Distributions under the Plan, which shall be the date that is no later than the Effective Date or thirty (30) days thereafter, to make a Distribution. Except as otherwise provided in the Plan, all Distributions to be made on account of Allowed Claims as of the Effective Date shall be made on the First Distribution Date. Distributions on account of Claims that first become Allowed Claims after the Distribution Date shall be made pursuant to the terms and conditions of the Plan.

ii. No Distribution shall be made on account of any Allowed Claim or portion thereof that (i) has been satisfied after the Petition Date pursuant to an order of the Bankruptcy Court; (ii) is listed in the Schedules as contingent, unliquidated, disputed or in a zero amount, and for which a Proof of Claim has not been timely filed or to which an objection has been filed by the Debtor, (iii) is evidenced by a Proof of Claim that has been amended by a subsequently filed Proof of Claim that purports to amend the prior Proof of Claim, except to the extent that the amended Claim is Allowed.

iii. Subsequent Distribution Dates. The Disbursing Agent shall determine subsequent Distribution dates in his or her sole reasonable discretion as and when there is sufficient Cash available to the Debtor to warrant a Distribution or when distributable operating profits are available. Such Distributions will be made pursuant to the provisions of the Plan governing the applicable Class and without interest.

iv.    *De Minimis* Distributions. The Disbursing Agent shall not have any obligation to make a Distribution on account of an Allowed Claim if the amount to be distributed to the specific Holder has a value less than five dollars ($5).

v.    Allocation of Plan Distributions Between Principal and Interest. To the extent that any Allowed Claim entitled to a Distribution under the Plan is composed of indebtedness and accrued but unpaid interest thereon, the Distribution shall, for all Tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

vi.    Distribution Record Date. Neither the Debtor nor the Disbursing Agent will have any obligation to recognize the transfer of any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes in and under the Plan to recognize and distribute only to those Holders of Allowed Claims who are Holders as of the close of business on the Distribution Record Date. Instead, the Disbursing Agent shall be entitled to recognize and deal for all purposes under the Plan with only those record Holders stated on the official claims register as of the close of business on the Distribution Record Date. The Distribution Record Date will be not more than 60 days after the Bankruptcy Court determines the amount of compensation and reimbursement of expenses owed to Professionals, and may be changed by order of the Bankruptcy Court.

vii.    No Distributions Pending Allowance. Notwithstanding any other provision of the Plan, no Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to the Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

viii.    To the extent that a Claim is not a Disputed Claim but is held by a Holder that is or may be liable to the Debtor on account of a Cause of Action, no Distributions shall be made with respect to all or any portion of such Claim unless and until such Claim and liability have been settled or withdrawn or have been determined by Final Order of the Bankruptcy Court or such other court having jurisdiction over the matter.

ix.    Distributions After Allowance. Distributions to the Holder of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, will be

made in accordance with provisions of the Plan that govern distributions to Holders in that Class.

**g.    Setoffs.** Unless otherwise authorized by a Final Order, any Holder of a Claim must assert any setoff or recoupment rights against a claim by the Debtor against such entity by filing an appropriate motion seeking authority to setoff or recoup on or before the Distribution Date or will be deemed to have waived and be forever barred from asserting any right to setoff against a claim by the Debtor notwithstanding any statement to the contrary in a Proof of Claim or any other pleading or document filed with the Bankruptcy Court or delivered to the Debtor.

h.    **Procedure for Treating and Resolving Class 3 Claims**.

i.    **Objection Deadline.** Prosecution of Objections. Except as set forth in the Plan with respect to Professional Fee Claims and Administrative Claims, all objections to Class 3 Claims must be filed and served on the Holders of such Claims no later than the Claims Objection Deadline, as such Deadline may be extended by the Bankruptcy Court. If an objection has not been filed to a Proof of Claim or the Schedules have not been amended with respect to a Claim that (i) was Scheduled by the Debtor but (ii) was not Scheduled as contingent, unliquidated and/or disputed, by the Claims Objection Deadline, as the same may be extended by order of the Bankruptcy Court, the Claim to which the Proof of Claim or Scheduled Claim relates will be treated as an Allowed Claim if the Claim has not been allowed earlier.

i.    **Releases, Injunction and Exculpation**.

i.    **Releases by the Debtor.** On the Effective Date, the Debtor, on behalf of themselves and its Estate shall release unconditionally, and shall be deemed to forever release unconditionally, the Debtor's Professionals, solely in its capacities as such, from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever (other than the right to enforce the performance of its respective obligations, if any, to the Debtor under the Plan, and the contracts and other agreements delivered under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured. known or unknown, foreseen or unforeseen, directly or derivatively, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, the Plan or this Disclosure Statement provided, however, that notwithstanding

the foregoing nothing contained herein is intended to or shall operate as a release of any claims for fraud, willful misconduct or gross negligence. The foregoing shall not release and shall not be deemed or construed to release Avoidance Actions or the recipients of any transfers that are avoidable or recoverable under Chapter 5 of the Bankruptcy Code.

j.    **Injunction. Except as otherwise provided in the Plan, the Confirmation Order shall provide, among other things, that from and after the Effective Date all Entities who have held, hold or may hold Claims against the Debtor are permanently enjoined from taking any of the following actions against the Debtor or its Estate, or any of its property on account of any such Claims: (1) commencing or continuing, in any manner or in any place, any action or other proceeding; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (3) creating, perfecting or enforcing any lien or encumbrance; (4) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor unless authorized under the Plan; and (5) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained in the Plan shall preclude such Persons from exercising its rights pursuant to and consistent with the terms of the Plan or the Confirmation Order.**

k.    **Exculpation and Limitation of Liability. Except as otherwise provided in the Plan and to the extent permissible under section 1125(e) of the Bankruptcy Code, the Debtor and its Professionals and any of such parties' successors and assigns, shall not have or incur any claim, action, proceeding, Cause of Action, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, right to payment or Claim (as defined in section 101(5) of the Bankruptcy Code), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether or not asserted directly or derivatively, in law, equity or otherwise to one another or to any Holder of a Claim, or any other party in interest, or any of its respective agents, employees, representatives, financial advisors, attorneys, or any of its successors or assigns, for any act or omission originating or occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the Debtor, the Chapter 11 Case, negotiation and filing of the Plan or any prior plans, filing the Chapter 11 Case, the pursuit of confirmation of the Plan or any prior plans, the consummation of the Plan, the administration of the Plan or the property to be liquidated and/or distributed under the Plan, except for fraud, willful misconduct or gross negligence as determined by a Final Order of a court of competent jurisdiction, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities under the Plan.**

l.      **Term of Bankruptcy Injunction or Stays**. All injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date unless otherwise provided in the Plan. Upon the Effective Date, the injunction provided under the Plan shall apply.

m.      **Indemnification Obligations**. Except as otherwise provided in the Plan, an order of the Bankruptcy Court or any agreement or document entered into in connection with the Plan, any and all indemnification obligations that the Debtor have pursuant to a contract, instrument, agreement or other document or applicable law shall be deemed rejected (if and to the extent executory) as of the Effective Date.

n.      **Miscellaneous Matters.** Services by and Fees and Expenses of Professionals. Fees and expenses of Professionals for services rendered and costs incurred after the Petition Date and prior to the Effective Date will be fixed by the Bankruptcy Court after notice and a hearing and such fees and expenses will be paid in accordance with the terms and conditions of the Plan.

i.      **Final Fee Application of Professionals.** All final requests for payment of Professional Fee Claims (the "Final Fee Applications") must be filed no later than thirty (30) days after the Effective Date. Objections, if any, to Final Fee Applications must be filed and served on counsel for the Debtor, the requesting Professional and the US Trustee no later than thirty (30) days from the date on which the Final Fee Application is served and filed. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Allowed amounts of the Professional Fee Claims shall be determined by the Bankruptcy Court.

o.      **Conditions Precedent to Plan Effectiveness.** Conditions Precedent to Plan Effectiveness and Effective Date. The Effective Date will occur when the conditions set forth in Article VIII of the Plan have been satisfied. Article VIII of the Plan specifies that it is a condition precedent to the effectiveness of the Plan that: (i) the Confirmation Order shall have been entered and become a Final Order and shall provide that the Debtor is authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the agreements or documents created in connection with the Plan or effectuate, advance or further the purposes thereof; (ii) all other actions, documents and agreements necessary to implement the Plan shall have been effected or executed including, without limitation, (iii) the Confirmation Order shall fix a deadline for the filing of requests for payment Administrative Claims and (iv) the Debtor shall have sufficient Cash to enable all required payments necessary to Confirmation to be made.

p.      **Waiver of Conditions**. The Debtor may waive, at any time, without notice, leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan, the conditions set forth in Article VIII of the Plan.

00039749.8                                    -32-

12.    **RISK FACTORS.**

a.    **Summary**. The following is intended as a summary of certain material risks associated with the Plan. Each Creditor must analyze and evaluate the Plan and this Disclosure Statement as a whole to determine whether there are any other risk factors that might pertain to them.

b.    **Satisfaction of Conditions to Effective Date**. The failure to satisfy any of the conditions precedent to the occurrence of the Effective Date will prevent confirmation of the Plan.

c.    **Voting Risks.** For the Plan to be confirmed, each Impaired Class is given the opportunity to accept or reject the Plan. Class 3 must accept the Plan in order for it to be Confirmed. With regard to the Impaired Classes that vote on the Plan, the Plan will be deemed accepted by each of the Impaired Classes if it is accepted by holders of Claims of such Class who hold at least two-thirds ($^2/_3$) in dollar amount and more than one half ($^1/_2$) in number (50% +1) of the total Claims of the Class actually voting on the Plan. Only those members of a Class who vote to accept or reject the Plan will be counted for voting purposes. To confirm the Plan, the Debtor must satisfy the requirements of section 1129(a) of the Bankruptcy Code. Although the Debtor believes that the Plan will satisfy those requirements, there can be no assurance that the Bankruptcy Court will reach the same conclusion or that the Confirmation Order, if challenged on appeal, will be affirmed. If the Plan does not receive the required support from Creditors, the Debtor may amend the Plan to provide alternative treatment to a dissenting class or may seek to confirm the Plan through the "cramdown" provisions of 11 U.S.C. § 1129(b). If the Plan does not confirm or does not become effective, the Debtor could ask that the Chapter 11 Case be converted to a case under chapter 7 or dismissed. Any objection to the Plan by a party in interest could either prevent, or delay for a significant period of time, confirmation of the Plan.

d.    **Objection Risks.** Pursuant to section 1129(a)(15), if the Holder of an Allowed Unsecured Claim objects to Confirmation of the Plan, the Court cannot confirm the Plan unless;

      i.    the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

      ii.    the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

      iii.    Under this section, if a Creditor holding an Allowed Unsecured Claim objects to Confirmation of the Plan, the Court, in ruling on the objection, will be required to determine whether the value of the payments to be made

to the objecting Creditor are equal to or greater than the amount of the
Claim or whether the value of the payments to be made under the Plan are
equal to or greater than the "projected disposable income" of the Debtor to
be received during the 5-year period beginning on the Distribution Date or
during the period for which the plan provides payments, whichever is
longer.

e.    **Risk of Loss of Lease.** Although the Bar has leased the same location for nearly 4
years, in its Prior Chapter 11 Case, it failed to assume its Lease; according to Bankruptcy Law, such
failure to assume is deemed a rejection of the Lease. As a result, the Landlord moved to Compel the
Surrender of the Premises, *etc*., asserting the rejection of the Lease. After much negotiations, the
Landlord and the Debtor reached a stipulation whereby the Debtor had to pay the Landlord all rental
arrears. Although it has done so to date, the Court has indicated that it would approve its motion to
assume the Lease in this Chapter 11 Case, no such order has been entered as of this date. However, if
the Debtor is unsuccessful in obtaining a renewal or new lease, the Debtor will likely have to move its
business to another location, preferably nearby to its present location, which moving costs are likely to
be substantial taken together with other costs of opening a new location. The Debtor's Stockholder has
agreed that in such an event, he will attempt to raise and contribute the necessary additional capital to
finance relocation, but such additional costs may be prohibitive.

13.    **REQUIREMENTS FOR CONFIRMATION**.

a.    **At the Confirmation Hearing**, the Bankruptcy Court will determine whether the
requirements of section 1129 of the Bankruptcy Code have been satisfied with respect to the Plan, in
which event the Bankruptcy Court will enter an order confirming the Plan. The Debtor will be required
to demonstrate that the Plan complies with all of the provisions set forth above. The Debtor believes
that the Plan satisfies all of the statutory requirements for confirmation of the Plan. The following
subsections discuss some of the most important requirements of section 1129(a) of the Bankruptcy
Code.

b.    **Acceptances Necessary to Confirm Plan.** At the Confirmation Hearing, the
Bankruptcy Court must determine, among other things, whether each Impaired Class has accepted the
Plan. Under Section 1126 of the Bankruptcy Code, an Impaired Class of Claims is deemed to have
accepted a plan if a plan has been accepted by creditors of that class that hold at least two-thirds ($^2/_3$)
in amount and more than one-half (½) in number (50% +1) of the allowed Claims of such class held by
creditors that have accepted or rejected the plan. Classes 2 and 2(a) are Impaired Classes entitled to
vote to accept or reject the Plan. Classes 1 and 3 are not impaired and so are conclusively presumed to
have accepted the Plan.

i.    In determining acceptances of the Plan, Ballots will only be counted if: (1)
properly completed (*e.g*., containing an original signature); (2) timely

received; and (3) the holder's Claim is duly scheduled by the Debtor as other than disputed, contingent, or unliquidated, or if the Creditor has timely filed with the Bankruptcy Court a proof of claim that is not a Disputed Claim. *The Ballot that you received does not constitute a proof of claim*.

ii.   In calculating whether a Creditor has voted for or against the Plan, the Debtor will not consider Ballots that do not properly indicate an acceptance or a rejection. If you are in any way uncertain whether or not your Claim has been correctly scheduled, you should review the Schedules and any amendments that are on file with the Bankruptcy Court. Do not contact the Debtor, its attorneys or the Bankruptcy Court with questions about the scheduling of your Claim. Any information they, or anyone else, may give that is inconsistent with the Schedules themselves is unauthorized, void, and of no effect.

c.   **Feasibility of Plan**. Section 1129(a)(11) of the Bankruptcy Code requires, as a condition to confirmation, that the Bankruptcy Court finds that confirmation of a plan is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed under the plan. This requirement is called "feasibility." **See Exhibit 8** evidencing the Cash available to the Debtor as of the Confirmation Date being sufficient for the First Distribution and the Debtor's projections are attached as **Exhibit 4**.

i.   The projections in **Exhibit 4** demonstrate that the Debtor will not require further financial reorganization or liquidation after the Stockholder's Cash Contribution including the contributed value of his services rendered as President for five years (@$75,000 per year) from the Effective Date).To that end, on or about November 6, 3017, the Stockholder's 2016 IRS Tax refund in the sum of $19,575.00 was applied to reduce the Debtor's remaining unpaid IRS Taxes. Finally, the Stockholder has agreed to contribute an additional amount to the Debtor, on a monthly basis, of $10,000 to be used in the event the Debtor needs additional funds up to that amount, in order to complete any monthly plan distributions during any seasonally slower revenue months beginning on the First Distribution Date. Accordingly, concern that the Debtor will need further financial reorganization is not an issue and, therefore, the Plan is by its nature and terms, feasible.

ii.   The Debtor has prepared a *pro forma* budget, attached as **Exhibit 6,** showing its projected income and expenses for five (5) years following an

anticipated Effective Date of December 31, 2017. The budget shows that the Debtor will be able to make the payments called for in the Plan without the need for further liquidation or reorganization. See **Exhibit 6**.

      d.    **Best Interest of Creditors Test**. Confirmation requires, among other things, that each holder of a Claim in an Impaired Class either: (i) accepts the Plan; or (ii) receives or retains under the Plan property of a value, as of the Effective Date, that is not less than the value the holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. This requirement is commonly referred to as the "Best Interests Test." See Liquidation Analysis in subsection f. i. below.

      e.    **Chapter 7 Liquidation**. To determine the value that the holders of Impaired Claims would receive if the Debtor were liquidated, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of assets and properties of the Debtor in the context of a chapter 7 liquidation case.

          i.    Section 704 of the Bankruptcy Code requires a chapter 7 trustee to collect and reduce to money the property of the estate as expeditiously as is compatible with the best interests of parties in interest. In the case of the Debtor, a chapter 7 trustee would be administrating an estate made up largely of the same assets that are available for Creditors under the Plan. The Cash available for satisfaction of Allowed Claims would consist of the proceeds resulting from the forced liquidation by a Chapter 7 Trustee of Assets of the Debtor, at a highly discounted price which is the norm for such sales, augmented by Cash, if any, held by the Debtor at the time of the commencement of the chapter 7 case. That Cash amount would then be reduced by the amount of any Priority Tax or Claims Secured by the Assets, if any, the costs and expenses of the liquidation, and additional Administrative Claims and other Priority Claims that may result from the use of chapter 7 for the purposes of liquidation. The costs of liquidation under chapter 7 would include fees payable to the trustee in bankruptcy, as well as those that might be payable to his or her attorneys and to other professionals that the trustee may engage, plus any unpaid expenses incurred by the Debtor during the Chapter 11 Case that would be allowed in the chapter 7 cases, such as compensation for attorneys, accountants or other professionals and costs and expenses of the Debtor. These Administrative Claims would have to be paid in Cash, in full, from the liquidation proceeds before the balance of those proceeds could be made available to pay other Priority Claims and Allowed General Unsecured Claims from the Chapter 11 Case.

f.    **Liquidation Analysis**. The Debtor intends to object to certain Claims and will require Holders of such Claims to document their claims prior to payment. There may be additional Causes of Action, such as preferences or fraudulent conveyances, that the Debtor may investigate and pursue that may result in recoveries for the benefit of the Debtor's Estate that would augment the proceeds of any Asset sales. Moreover, to the extent that any Claims are disallowed, the total amount of Allowed Claims will also decrease, leading to a greater distribution to each Creditor.

i.    The Liquidation Analysis attached as **Exhibit 5**[7] provides the likely value that would be obtained if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. The Debtor believes that liquidation of the Debtor's Assets (including its bar and restaurant Assets at a likely highly discounted value) even as a going business will result in little if any distribution to the General Unsecured Creditors. This is so because the Secured and Priority Taxes have priority in payment over General Unsecured Creditors; therefore any proceeds resulting from a sale of the Debtor's assets or its Business will first go to pay nearly $1,000,000 in priority and Secured Taxes owed to the NYSDOTF and IRS rather than to pay General Unsecured Creditors. Therefore, even if the Debtor liquidated its business, in the unlikely event it were to realize one million dollars, the General Unsecured Creditors would still receive no distribution. Conversely, the proposed Plan will result in a greater distribution to General Unsecured Creditors; further, under chapter 7 (i) there would be the additional expense of compensation payable to a chapter 7 trustee and the trustee's professionals' fees and (ii) the Chapter 7 trustee would not be able to obtain a Capital Contribution from Debtor's Stockholder to fund any payment to General Unsecured Creditors.

g.    **Classification**. In accordance with section 1122 of the Bankruptcy Code, the Plan provides for the classification of four (4) basic Classes of Claims. Section 1122(a) permits a plan to place a claim or an interest in a particular class only if the claim or interest is substantially similar to the other claims or interests in that class. The Debtor believes that the classification of Claims under the Plan is appropriate and consistent with applicable law.

h.    **Deleted.**

i.    **No Unfair Discrimination**. A plan of reorganization "does not discriminate unfairly" if (a) the legal rights of the non-accepting Impaired Class are treated in a manner that is consistent with

---

[7]    Attached to **Exhibit 3 are brochures** of comparable restaurants currently on the market, evidencing the likelihood of little return to the Debtor's Creditors if its remaining Lease were sold or assigned to a third party, assuming such a prospective buyer could be located.

the treatment of other classes whose legal rights are intertwined with those of the non-accepting class, and (b) no class receives payments in excess of that which it is legally entitled to receive for its allowed claim. The Debtor believes that under the Plan (i) all Impaired Classes of Claims are treated in a manner that is consistent with the treatment of other Classes of Claims with which its legal rights are intertwined, if any, and (ii) no Class of Claims will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims in such Class. Accordingly, the Debtor believes that the Plan does not discriminate unfairly as to any Impaired Class.

j.      **Fair and Equitable Test**. A plan is "fair and equitable" with respect to unsecured creditors if either: (i) each holder of an unsecured claim receives or retains under the plan property of a value equal to the amount of its allowed claim; or (ii) the holders of claims that are junior to the claims of the non-accepting class do not receive any property under the plan on account of such claims and interests. Under the Plan, there are no creditors with priority junior to the General Unsecured Creditors. By definition, the Plan is fair and equitable with respect to Class 4(c) regardless of whether the General Unsecured Creditors accept or reject the Plan. The cramdown provisions are complex and this summary is not intended to be a complete statement of the law in this area.

k.      **The Rule of Absolute Priority**. A plan is "fair and equitable" only if the Allowed value of Claims are to be paid in full, or if the Holder of any Claim or Interest that is junior to dissenting creditors, if any, will not receive or retain any property under the Plan on account of such junior claim or interest. § 1129(b)(2)(B)(ii). Accordingly, the rule is Equity Interest Holders cannot receive distributions pursuant to the Plan prior to any dissenting holder of a junior claim or interest. The Plan also provides that the Stockholder will retain his Equity Interest in the reorganized Debtor, only *upon condition* they contribute "substantial" and "essential" funding of the Debtor to the extent of all Allowed Administrative Claims and approved compensation of the Debtor's Professionals. The Stockholder has agreed to make such Cash contributions to the Debtor for payment of the Debtor's Professionals estimated at approximately $50,000 together with the value of the Debtor's used equipment, *i.e.*, $10,000 for a total of $60,000, remain personally liable for all Tax Claims and contribute the reasonable value of his services as President of the Debtor at $75,000 annually or am aggregate of $375,000) and accordingly will remain the President and Equity Holder of the Reorganized Debtor. In addition, the Stockholder will contribute the cash value of the proceeds of the sale of the Debtor's Inventory as of the Effective Date. Moreover, on or about November 6, 3017, the Stockholder's 2016 IRS Tax refund in the sum of $19,575.00 was applied to reduce the Debtor's remaining unpaid IRS Taxes. Finally, the Stockholder has agreed to contribute an additional amount to the Debtor, on a monthly basis, of approximately $10,000.00 (aggregating $60,000) to be used in the event the Debtor needs additional funds up to that amount, in order to complete any monthly plan distributions beginning on the First Distribution Date. The Debtor will not pay allowed Secured or Priority Tax Claims or Allowed General Unsecured Creditors on the Effective Date in full, but will pay both (i) all Priority and Secured Tax Claims in full over 96 monthly payments beginning on the First Distribution Date and (ii) the Allowed Claims of General Unsecured Creditors will also be paid in the sum of $0.01 on the dollar, annually for five years, unless such Unsecured Creditors agree to accept $0.02 in a one time payment

after the Effective Date. In addition, the Stockholder will remain surety and personally liable for all unpaid Taxes owed by the Debtor until the Allowed Taxes are paid in full.

14.    **EFFECT OF CONFIRMATION**.

a.    **Binding Effect of Confirmation.** Confirmation will bind the Debtor, all Creditors and other parties in interest to the provisions of the Plan whether or not the Claim of the Creditor is impaired under the Plan and whether or not the Creditor has voted to accept the Plan.

b.    **Vesting of Assets Free and Clear of Liens, Claims and Interests**. Except as otherwise provided in the Plan or in the Confirmation Order, upon the Effective Date, title to all assets and property of the Debtor and all property of its Estate shall revest in the Debtor and each and every Claim, demand or cause of action that the Debtor had or had power to assert immediately prior to the Confirmation Date will, except as provided in the Plan vest in the Debtor free and clear of all liens, claims and interests, subject to the Plan and the Debtor shall continue in business; **provided**, *however*, that the liens held by the Taxing Authorities shall not be released until all quarterly (or monthly) payments to Secured and Priority Tax Claim Holders have been paid in full pursuant to the Plan.

c.    **Good Faith**. Confirmation of the Plan shall constitute a finding that (i) Plan has been proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code, and (ii) the solicitation of acceptances or rejections of the Plan has been in good faith and in compliance with applicable provisions of the Bankruptcy Code.

d.    **No Limitations on Effect of Confirmation**. Nothing contained in the Plan will limit the effect of Confirmation as described in section 1141 of the Bankruptcy Code.

e.    **Section 1146 Exemption**. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan, or the making or delivery of an instrument of transfer under the Plan, may not be Taxed under any law imposing a stamp Tax or similar Tax. Thus, any sales of real property shall be free of these Taxes.

15.    **FEDERAL INCOME TAX CONSIDERATIONS**.

a.    **Consummation of the Plan,** including certain cancellation of indebtedness of the Debtor and other actions required under the Plan may result in recognition of income, deductions, gain or loss to the Debtor and the possible incurrence of Taxes, which may constitute an Administrative Expense Claim. The Federal income Tax consequences to a particular Creditor will depend primarily upon whether that Creditor's claim constitutes a security for Federal income Tax purposes. The determination as to whether any particular Claim constitutes a security is complex and depends on facts and circumstances surrounding the origin and nature of the Claim. The receipt of Cash by the holder of an Allowed General Unsecured Claim against the Debtor may be a fully Taxable transaction. Accordingly, Holders of those Claims may recognize gain or loss in an amount equal to the difference

between (i) the amount realized in satisfaction of the Claim (other than in respect of any Claim for accrued but interest, and excluding any portion required to be treated as imputed interest due to the post-Effective Date distribution of such consideration following the resolution of any Disputed Claims in the same class), and (ii) the holder's adjusted Tax basis in its Claim (other than any Claim for accrued but unpaid interest).

      b.     **NO REPRESENTATIONS ARE MADE REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE PLAN TO ANY HOLDER OF A CLAIM. EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN.**

16.    **ALTERNATIVES TO THE PLAN**.

      a.     The Debtor believes that, if the Plan is not confirmed or is not confirmable, the only realistic alternative Plan is conversion to chapter 7 pursuant to which a trustee would be appointed to liquidate any remaining assets of the Debtor to the highest bidder for distribution to Creditors in accordance with the priorities established by the Bankruptcy Code. Such liquidation would likely realize very little for Creditors. For the reasons discussed above, the Debtor believe that Confirmation of the Plan would provide each holder of a General Unsecured Claim entitled to receive a distribution under the Plan with a recovery that is expected to be at least as much and likely greater than it would receive in a liquidation under chapter 7 of the Bankruptcy Code.

17.    **CONCLUSION**.

      a.     The Debtor believes that the Plan is in the best interest of Creditors and urges Creditors to vote to accept the Plan.

Dated: Brooklyn, New York
      February 12, 2018

           /s/ *Akiva Ofshtein*
           Akiva Ofshtein, President

Randall S. D. Jacobs, PLLC
*Attorney for debtor and*
*debtor-in-possession Prime Six, Inc.*

By: /s/ *Randall S. D. Jacobs*
      Randall S. D. Jacobs, Esq.
Office and Post Office Address
30 Wall Street, 8th Floor
New York, New York 10005
rsdjacobs@chapter11esq.com
Tel: (212) 709-8116