UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x          Case No. 17-40104 (cec)
                                                                    :
IN RE:                                                              :
                                                                    :
            PRIME SIX, INC.,                                        :
                                                                    :
                          Debtor-in-Possession.  :
                                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x          Chief Judge Carla E. Craig


## DEBTOR'S SECOND AMENDED CHAPTER 11
## PLAN OF REORGANIZATION


Dated: February 13, 2018
          New York, New York

                                        RANDALL S. D. JACOBS, PLLC


                                        By: /s/ *Randall S. D. Jacobs*
                                        Randall S. D. Jacobs
                                        *Office and Post Office Address*
                                        30 Wall Street, 8th Floor
                                        New York, New York 10005
                                        Tel.: (212) 709-8116
                                        Fax: (973) 226-8897
                                        rsdjacobs@chapter11esq.com
                                        *Attorneys for the Debtor and*
                                                *Debtor in Possession*


00039401.14

1.    **INTRODUCTION**.  Prime Six, Inc., the above-captioned debtor and debtor in possession[1] this chapter 11 Plan of Reorganization dated February 13, 2018at it may be amended (the "Plan"), to resolve the outstanding Claims against it. All Holders of Claims who are eligible to vote on this Plan are encouraged to read the Plan attached as Exhibit 1 to the accompanying Disclosure Statement also dated September 18, 2017, as it may be amended[2] including all Exhibits, before voting to accept or reject this Plan. Subject to certain restrictions and requirements set forth in §1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation. The Debtor is the proponent of this Plan within the meaning of §1129 of the Bankruptcy Code.

a.    This Plan sets forth the means by which the Debtor will satisfy the Claims against it and after the Effective Date of the Plan continue to operate the Debtor's Business at its Brooklyn Premises for the term of its Lease. The Debtor's sole Stockholder will provide a Cash Contribution to the Debtor for payment of Claims through (i) Cash of new value equal to or greater than the forced liquidation value of the Debtor's assets, (ii) Cash up to $10,000 per month, if needed by the Debtor, in order to pay agreed Plan Distributions to the Taxing Authorities during its slow season, while maintaining his continued personal liability as a responsible person to pay the Debtor's unpaid federal income tax liabilities (the "IRS Claim") and unpaid New York State Sales Tax liabilities (the "Sales Tax Claim") owed to NYSDOTF and related but substantially smaller tax liabilities to the City of New York. On November 6, 2017, the Stockholder's personal IRS income tax refund from 2016 in the amount of $19,575 was applied to reduce the Debtor's IRS Claim by that amount. Pursuant to the Plan, upon the Effective Date, the sole Stockholder will deliver his initial Cash Contribution, any net remaining Inventory sales proceeds in its bank accounts or on Premises into a segregated account. The Stockholder and President, Akiva Ofshtein ("Mr. Ofshtein") has agreed to produce up to $10,000 on a monthly basis for the Debtor's use in the event that it needs such funds to make any monthly Plan Distribution to Taxing Authorities during the Debtor's slower season. Mr. Ofshtein will act to administer and liquidate those Cash assets in payments due under the Plan, object to and settle currently stayed Claims against the Debtor's estate. Mr. Ofshtein will also act as the Disbursing Agent to satisfy Claims in accordance with this Plan.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO CAREFULLY READ BOTH THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS) AND THIS PLAN, EACH IN ITS ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.**

2.    **Defined Terms and Rules of Interpretation**

---

[1]

The terms used herein are defined in Article I of this Plan, any Exhibit to this Plan or to the Disclosure Statement, the Bankruptcy Code or the Bankruptcy Rules. Some of these terms are restated herein as necessary for the sake of clarity and the convenience of the reader.

    a.      Rules of Construction. For purposes of this Plan, except as expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I of this Plan or any Exhibit. Any Capitalized term used but not defined in this Plan shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine or neuter genders, and the feminine gender shall include the masculine or neuter genders.

3.    **Definitions**

    a.      **Accountant** means Denis L. Abramowitz CPA, PLLC, court approved accountant retained by the Debtor.

    b.      **Administrative Claim** means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case under §§ 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code including: (a) any actual and necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and Claims of governmental units for taxes (including tax audit Claims related to tax years commencing after the Petition Date, but excluding Claims relating to tax periods, or portions thereof, ending on or before the Petition Date); and (b) all other claims entitled to administrative claim status pursuant to a Final Order of the Bankruptcy Court, other than Professional Fee Claims.

    c.      **Administrative Claims Bar Date** means the December 22, 2017 at 5:00 p.m. by which all requests for payment of an Administrative Claim arising after the Petition Date other than Professional Fee Claims or otherwise addressed herein, must be filed with the Court and served on counsel for the Debtor.

    d.      **Allowed Claim** means a Claim or any portion thereof (a) that has been allowed by a Final Order of the Bankruptcy Court (or such other court as the Debtor and the Holder of any Claim agree may adjudicate the Claim and any objections thereto), (b) that either (x) has been listed as liquidated, non-contingent, and undisputed in an amount greater than zero on the Schedules, or (y) is the subject of a timely filed proof of claim as to which either (i) no objection to its allowance has been Filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, or (c) that is expressly Allowed in a liquidated amount in this Plan; provided, however, that with respect to an Administrative Claim, "Allowed Claim" means an Administrative Claim as to which a timely written request for payment has been made in accordance with applicable bar dates for such requests set by the Bankruptcy Court (if such written request is required), in each case as to which the Debtor, or any other party in interest (x) has not interposed a timely objection or (y) has interposed a timely objection and such objection has been settled, waived through payment, withdrawn, or denied by a Final Order.

e.      **Assets** means the Debtor's remaining Cash, forced liquidation value of its Equipment and/or Inventory at the close of business on the day before the contemplated Confirmation Date.

f.      **Avoidance Actions** means Causes of Action arising under Bankruptcy Code §§502, 510, 541, 542, 544, 545, 547 through 551 and/or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action; provided, however, that Avoidance Actions shall not be deemed to include those causes of action released, waived and/or discharged pursuant to this Plan or an order of the Bankruptcy Court.

g.      **Ballot** means each of the ballot forms distributed to each Holder of a Claim entitled to vote to accept or reject this Plan.

h.      **Bankruptcy Code** means title 11 of the United States Code, as now in effect or hereafter amended and as applicable to the Chapter 11 Case.

i.      **Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of New York or any other court with jurisdiction over the Chapter 11 Case.

j.      **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended.

k.      **Bar Date** means March 20, 2017 or such other deadline set by the Bankruptcy Court for the filing of Proofs of Claim.

l.      **Business Day** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)) or as recognized in the State of New York.

m.      **Capital or "Cash" Contribution (or the "Contribution")** means the Cash contributed by the Debtor's Stockholder to the Debtor (including the application of his 2016 IRS Income Tax refund of $19,575.00 to the Debtor's IRS Tax Claim on November 6, 2017) the amount of at least $10,000 plus an estimated $50,000 for payment of the approved final Fee Applications for Professional Fee Claims by the Debtor's Professionals, together with up to $10,000 additional Cash per month if needed by the Debtor to complete its monthly Plan distributions to the Taxing Authorities and Stockholder's waiver of his salary as compensation for his services as President of the Debtor, estimated to be approximately $75,000 per year, which the Debtor may use to pay the Taxing Authorities. In exchange for such Contributions, the Stockholder shall retain his equity interest in the Debtor upon condition that the Plan is fully consummated.

n.      **Cash** means legal tender of the United States of America and equivalents thereof, which may be conveyed by check or wire transfer.

o.    **Causes of Action** means, collectively, any and all Avoidance Actions, claims, actions, proceedings, causes of action, suits, accounts, controversies, agreements, promises, rights of action, rights to legal remedies, rights to equitable remedies, rights to payment and Claims (as defined in §101(5) of the Bankruptcy Code), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, that the Debtor and/or its Estate may hold against any Entity including, without limitation, but excluding those released, exculpated or waived pursuant to this Plan or other order of the Bankruptcy Court.

p.    **Chapter 11 Case** means the case under chapter 11 of the Bankruptcy Code, assigned Case No.17-40104 that the Debtor commenced on the Petition Date.

q.    **Claim** means a "claim" as defined in §101(5) of the Bankruptcy Code.

r.    **Claims Objection** Deadline means the last day for filing objections to Claims, other than Administrative Claims and Professional Fee Claims, which day shall be (a) the later of 60 days after the Effective Date or (b) such other date as the Bankruptcy Court may order.

s.    **Class** means a category of Holders of Claims, as described in Article II.

t.    **Confirmation** means entry by the Bankruptcy Court of the Confirmation Order.

u.    **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order.

v.    **Confirmation Hearing** means the hearing held by the Bankruptcy Court to consider confirmation of this Plan as such hearing may be adjourned or continued from time to time.

w.    **Confirmation Order** means the order of the Bankruptcy Court confirming this Plan under §1129 of the Bankruptcy Code.

x.    **Consummation** or Consummate means the occurrence of, or to achieve, the Effective Date.

y.    **Creditor** means any Entity that holds a Claim against the Debtor.

z.    **Debtor** means Prime Six, Inc., debtor and debtor-in-possession in this Chapter 11 Case.

aa.    **Debtor's Business** means the Debtor's restaurant and bar located at 242 Flatbush Avenue, Brooklyn, New York, its sole Premises.

bb.     **Disallowed Claim** means a Claim, or any portion thereof, that (a) has been disallowed by a Final Order, (b) is scheduled at zero or as contingent, disputed or unliquidated and as to which no Proof of Claim has been filed by the Bar Date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order, or otherwise deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (c) is not Scheduled, and as to which (i) no Proof of Claim has been filed by the Bar Date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (ii) no request for payment of an Administrative Claim has been filed by the Administrative Claims Bar Date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law.

cc.     **Disbursing Agent** means Mr. Ofshtein, the Stockholder, who is the Person who will cause the Debtor to make the Distributions pursuant to the Plan.

dd.     **Disclosure Statement** means the disclosure statement, as it may be amended (including all Exhibits and schedules) relating to this Plan, distributed contemporaneously herewith in accordance with §§1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3016. (See Exhibit 1).

ee.     **Disputed Claim** means a Claim, or any portion thereof, that has not been Allowed pursuant to this Plan or a Final Order.

ff.     **Disputed Claim Amount** means (a) if a liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) the liquidated amount set forth in the Proof of Claim relating to the Disputed Claim; (ii) an amount agreed to by the Debtor and the Holder of the Disputed Claim; or (iii) if a request for estimation is filed by any party, the amount at which the Claim is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) an amount agreed to by the Debtor and the Holder of the Disputed Claim or (ii) the amount estimated by the Bankruptcy Court with respect to the Disputed Claim; or (c) if the Claim is listed on the Schedules as unliquidated, contingent or disputed and no Proof of Claim was filed, or deemed to have been filed, by the Bar Date and the Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, zero.

gg.     **Distribution** means any distribution of Cash to the Holders of Allowed Claims in accordance with the terms of this Plan.

hh.     **Distribution Record Date** means, for purposes of the Distributions to be made to Holders of Allowed Unsecured Claims, the last Business Day of the month preceding the Distribution Date.

ii.     **Effective Date** means the first Business Day on which this Plan becomes effective 30 days after the entry of the Confirmation Order.

jj.     **Entity** shall have the meaning set forth in §101(15) of the Bankruptcy Code.

kk.     **Estate** means the estate of the Debtor created under §541 of the Bankruptcy Code.

ll.     **Exhibit** means an exhibit annexed to either this Plan or to the Disclosure Statement.

mm.     **Face Amount** means (a) when used in reference to a Disputed Claim, the Disputed Claim Amount and (b) when used in reference to an Allowed Claim, the Allowed amount of such Claim.

nn.     **Final Decree** means the decree contemplated under Bankruptcy Rule 3022.

oo.     **Final Fee Application** means the final request for Payment of its allowed Professional Fees and final reimbursement of Allowed Expenses by the Debtor's Professionals which have been filed no later than 30 days after the Effective Date.

pp.     **Final Order** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Case, the operation or effect of which has not been stayed, reversed or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal, seek review or rehearing or petition for certiorari has expired and as to which no appeal or request for review or rehearing or petition for certiorari was filed or, if filed, remains pending.

qq.     **First Distribution Date** means the date upon which initial distributions are made by the Disbursing Agent to Holders of Allowed Claims entitled to receive Distributions under this Plan, which shall be no later than 30 days after the Effective Date.

rr.     **General Unsecured Claim** means an unsecured Claim by one or more of the Debtor's trade vendors and general creditors that is not an Administrative Claim, Priority Tax Claim, Priority Non-Tax Claim, Secured Claim or Professional Fee Claim, and is within Class 3.

ss.     **Governmental Unit** means a "governmental unit" as defined in §101(27) of the Bankruptcy Code.

tt.     **Holder** means an Entity holding a Claim.

uu.     **IRS** means the Internal Revenue Service of the U. S. Department of the Treasury.

vv.     **IRS Claim** means the Proof of Claim No. 12, as amended, filed against the Debtor by the IRS.

ww.     **Impaired** means a Claim or Class that is impaired within the meaning of §1124 of the Bankruptcy Code.

xx.     **Inventory** means the beer, wine and liquor products sold by the Debtor in the ordinary course of its business generally restocked on a daily basis.

yy.     **Landlord** means Fang Realty, LLC, the owner of 242 Flatbush Avenue, Brooklyn, New York, from whom the Debtor leases the Premises.

zz.     **Lease** means the Debtor's Lease of 242 Flatbush Avenue, Brooklyn New York as amended, entered into with Landlord Fang Realty, Inc.

aaa.    **Lien** shall mean any lien, security interest, pledge, title retention agreement, encumbrance, charge, mortgage or hypothecation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

bbb.    **Local Rules** means the Local Rules of the United States Bankruptcy Court for the Eastern District of New York.

ccc.    **NYSDOTF** means the New York State Department of Taxation and Finance.

ddd.    **Ofshtein**, means Mr. Akiva Ofshtein, President, Cash Contributor and sole Stockholder (Equity Interest Holder) of the Debtor and Reorganized Debtor.

eee.    **Person** shall have the meaning set forth in §101(41) of the Bankruptcy Code.

fff.    **Petition Date** means January 11, 2017.

ggg.    **Plan** means this chapter 11 plan, as it may be amended, and all supplements, appendices, and schedules, either in its current form or as the same may be altered, amended, or modified from time to time.

hhh.    **Premises** means the location of the Debtor's Business at 242 Flatbush Avenue, Brooklyn, New York 11217.

iii.    **Priority Non-Tax Claim** means a Claim, other than an Administrative Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to §507(a) of the Bankruptcy Code.

jjj.    **Priority Tax Claim** means a Claim of a Governmental Unit of the kind specified in §507(a)(8) of the Bankruptcy Code, including the IRS and NYSDOTF.

kkk.    **Professional** means (a) any professional employed or retained in the Chapter 11 Case pursuant to §§327, 328, or 1103 or otherwise of the Bankruptcy Code and (b) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to §503 of the Bankruptcy Code.

lll.   **Professional Fee Claim** means a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses or other charges incurred after the Petition Date and prior to and including the Effective Date.

mmm.  **Proof of Claim** means the proof of claim that must be filed on or before the Bar Date or such other date as prescribed by the Bankruptcy Court.

nnn.   **Sales Tax Claim** means Proof of Claim, No. 1, filed against the Debtor by the NYSDOTF for unpaid sales tax, penalties and interest.

ooo.   **Secured Claim**, pursuant to 11 U.S. Code § 506 - Determination of secured status, means: (1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

ppp.   **Scheduled** means, with respect to any Claim, the status, priority and amount, if any, of such Claim as listed in the Schedules.

qqq.   **Schedules** means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor pursuant to §521 of the Bankruptcy Code and the Bankruptcy Rules, as such Schedules have been or may be further modified, amended or supplemented in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

rrr.   **Solicitation** means the solicitation by the Debtor of acceptances and rejections of this Plan in accordance with §1125 of the Bankruptcy Code.

sss.   **Taxing Authorities** means collectively, the IRS, NYSDOTF and City of New York with respect to their respective Proofs of Claim filed for unpaid Federal, State and City Taxes.

ttt.   **Tax Claim** means all or that portion of a Claim held by a Governmental Unit for a tax assessed or assessable against the Debtor, including income taxes, employment taxes and any related penalties or interest.

uuu.   **Taxes** means any and all taxes, levies, imposts, assessments, customs duties or other charges of whatever nature imposed at any time by any governmental authority or by any political subdivision or taxing authority thereof or therein and all interest, penalties or similar liabilities with respect thereto.

vvv.    **Unclassified** Claims means Administrative Claims incurred after the Petition Date.

www.    **Unimpaired** means a Claim that is not impaired within the meaning of §1124 of the Bankruptcy Code.

xxx.    **Unsecured** Claims means a payment request made to the bankruptcy court by any creditor who doesn't have the right to sell property to satisfy the underlying debt.

yyy.    **U. S. Trustee** means the Office of the United States Trustee for Region 2.

zzz.    **Voting Deadline** means the date and time, as fixed by an order of the Bankruptcy Court and set forth in the Disclosure Statement, by which all Ballots to accept or reject this Plan must be received in order to be counted.

4.    **Rules of Interpretation**.

a.    For purposes of this Plan (a) any reference in this Plan to an agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in this Plan to an existing document or Exhibit filed or to be filed means such document or Exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references in this Plan to sections, articles, Schedules and Exhibits are references to sections, articles, Schedules and Exhibits of or to this Plan, (d) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan, (e) captions and headings to Articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan and (f) to the extent not modified herein, the rules of construction set forth in §102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

b.    Computation of Time. In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. Governing Law. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of the State of New York shall govern the construction and implementation of this Plan and any agreements, documents and instruments executed in connection with this Plan.

5.    **Classification of Claims and Voting Eligibility**.

a.    **Introduction**. All Claims except Administrative Claims and Priority Tax Claims are placed in the Classes set forth below. In accordance with §1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified. A Claim is placed in a particular Class only to the extent that the Claim falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim falls within the description of the other Classes. A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such

Claim is Allowed in that Class and the Claim has not been paid, released, settled or withdrawn prior to the Effective Date.

b.  **Unclassified Claims (not entitled to vote on this Plan)**.

i.    Administrative Claims. (None known)

c.  **Unimpaired Classes** of Claims (deemed to have accepted this Plan and, therefore, not entitled to vote on this Plan).

i.    Class 1(a): Secured IRS Tax Claims.
ii.   Class 1(b): Secured NYSDOTF Sales Tax Claims.
iii.  Class 1(c): Secured NYC (Office of Administrative Trials & Hearings).
iv.   Class 1(d): Secured Claims of Fang Realty, Inc., if any.
v.    Class 2(a): Priority IRS Tax Claims.
vi.   Class 2(b): Priority NYSDOTF Sales Tax Claims.
vii.  Class 2(c): Priority NYC DOF Tax Audit Claims.
viii. Class 4: Equity Interests of the Debtor's Stockholder.

d.  **Impaired Classes** of Claims (entitled to vote on this Plan).

i.    Class 3: General Unsecured Claims.

6.  **Treatment of Claims**. Unclassified Claims.
   a.  **Administrative Claims**. Except as otherwise provided herein, and subject to the requirements set forth herein, on, or as soon as reasonably practicable after the later of (i) the Effective Date or the First Distribution Date, and (ii) the date an Administrative Claim becomes an Allowed Administrative Claim, a Holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for the Allowed Administrative Claim, (a) Cash equal to the unpaid portion of the Face Amount of such Allowed Administrative Claim or (b) such other treatment as to which the Holder and the Debtor shall have agreed; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto. Distributions to Holders of Allowed Administrative Claims shall be made by the Debtor.

   b.  **Release of Lien on Priority or Secured Tax Claims**. Upon full payment of Allowed Priority or Secured Tax Claims, either in full in Cash as may be agreed, in accordance with Section 1129(a)(9)(c)(ii), including statutory interest on the IRS Tax Claim and 8% interest on NYSDOTF Secured and Priority Claims and NYC Secured Tax Claims, upon full payment, the Taxing Authorities shall issue a release of any lien against the Debtor's

property and shall record such release with the appropriate New York State governmental entity.

7.  **Unimpaired Claims**.

    a.  **Class 1 and 2 Priority and Secured Tax Claims.** The IRS Priority Tax Claim ($92,201.45) and Secured Tax Claim ($342,076.64) and NYSDOTF's Priority Tax Claim of $144,487.41 and Secured Claim of $357,278.52 (less the penalty portion of $77,427.06 agreed to be treated as Unsecured) resulting in NYSDOTF Secured Claim of $279,851.46 shall be Allowed and treated pursuant to the Bankruptcy Code as a Priority Tax Claim under Section 507(A)(B) and a Secured Claim, respectively. Except to the extent that a Holder of an Allowed Priority or Secured Tax Claim has been paid by the Debtor prior to the Effective Date and is therefore unimpaired, or agrees to a different treatment, each Holder of an Allowed Priority or Secured Tax Claim shall receive, at the Debtor's sole discretion, either Cash in an amount equal to the Allowed Priority or Secured Tax Claim (i) on the Effective Date or (ii) over 96 equal monthly payments, beginning on the First Distribution Date, and continuing over a period ending not later than eight (8) years after the Effective Date and as to the NYSDOTF Tax Claim together with annual interest at the rate of 8%, and over the same 96 month period as agreed by the IRS together with statutory interest on the Secured Tax portion only from the Effective Date in accordance with Section 1129(a)(9)(c)(ii). All Allowed Priority or Secured Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business by the Disbursing Agent. Mr. Ofshtein shall cause all Distributions to be made by the Debtor to Holders of Allowed Secured and Priority Tax Claims.

    b.  Except to the extent that a Holder of an Allowed Class 1 Secured or Class 2 Priority Tax Claim, if any, has been paid prior to the Distribution Date or agrees to a different treatment, within 30 days of the Effective Date each Holder of an Allowed Class 1 Secured or Class 2 Priority Tax Claim shall receive, at the Debtor's sole discretion, Cash in an amount equal to the Allowed Amount of its Allowed Secured or Priority Tax Claim (a) as soon as practicable after the later of (i) the Effective Date or the Distribution Date and (ii) the date the Claim becomes an Allowed Secured or Priority Tax Claim, or (b) in 96 equal monthly payments, plus annual interest at the rate of 8% as to the NYSDOTF and pursuant the statutory rate of interest as to the IRS Secured Tax Claim (excluding Priority Tax Claims), beginning on the Distribution Date and continuing over a period ending not later than eight (8) years after the Distribution Date. Payment will be in full satisfaction, settlement, release and discharge of, and in exchange for the Allowed Secured or Priority Tax Claim.

    c.  Distributions to the Holders of the Allowed Secured or Priority Tax Claims shall be made by the Debtor. It shall be an event of default solely under this Article if the Debtor fails to make any payment to the Holders of the Secured or Priority Tax Claim as provided in this Plan, (y) if the Debtor fail to pay any tax liabilities owing to the Holders of the Secured or

Priority Tax Claim or (2) if the Debtor fails to file tax returns by the due date of the return or of any extension of time permitted under title 26, US. Code or New York State law.

d.      In the event of any such default under this Article the Holder of an Allowed Secured or Priority Tax Claim shall provide written notice to the Debtor and its counsel. Such notice shall, at a minimum (a) identify the nature of the default, (b) state the amount of the default, if any, (e) notify the Debtor of the last date upon which such default can be cured and (d) notify the Debtor that if such default is not cured, the Holder of a Class 1 or 2 Allowed Secured or Priority Tax Claim may collect any unpaid liabilities through the administrative collection provisions of the title 26, US. Code, or New York State law.

e.      Upon receipt of such written notice of default, the Debtor shall have a period of thirty (30) days from receipt of such notice to cure such default and during such thirty (30) days, the Holder of a Allowed Secured Tax and Priority tax Claim shall take no action against the Debtor. If such default is cured by the Debtor on or within said thirty (30) day period, then this Plan shall continue in full force and effect as if no default had occurred.

f.      If the Debtor fails to cure such default on or within said thirty (30) day period, then the Holder of an Allowed Secured or Priority Tax Claim may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code, or New York State law and the automatic stay of 11 USC 362(a) and the Plan injunction is lifted solely to permit the Holder of an Allowed Secured or Priority Tax Claim to collect any unpaid Claims owing to it without further order of the Court.

g.      It shall be an event of default under the Plan if the Debtor (x) fails to make any payment to the Holder of an Allowed Class 2 Priority Tax Claim as provided in the Plan, (y) if the Debtor fails to pay any post-confirmation Tax liabilities owing to the Holder of the Class 2 Priority Tax Claim or (z) if the Debtor fails to file post-confirmation Tax returns by the due date of the return or of any extension of time permitted under title 26, U.S. Code or New York State Law.

h.      **Secured Claims**. The Holder of such an Allowed Non-tax Secured Claim in Class 1(d) shall retain its Lien in the property securing the debt. The Plan leaves unaltered the legal, equitable and contractual rights to which the Holder is entitled under its loan and security documents. The Debtor shall continue to make current payments of monthly principal and interest to the Holder. Any pre-Petition Date arrears that are owed to the Holder shall be paid in full on the Effective Date. Distributions to the Holder shall be made by the Debtor.

i.      **Class 4 Equity Interest Claim**: The sole Stockholder of such Equity Interest Claim shall retain his Equity Interest in the Reorganized Debtor, upon condition of his contributing new value (the Contribution, including the application of his 2016 IRS Income Tax refund of $19,575.00 to the Debtor's IRS Tax Claim on November 6, 2017) to the Debtor in (i) Cash equal to at least $10,000, which is greater than the appraised forced liquidation value of the Debtor's Equipment, (ii) together with estimated $50,000 to be paid to the Debtor

to pay the Court approved fees and expenses of its Professionals through the Final Decree. In addition, the Stockholder will provide up to $10,000 additional Cash to the Debtor on a monthly basis for up to five months, if needed to complete Plan payments to the Taxing Authorities. In addition, Mr. Ofshtein will contribute the value of his salary as President of the Debtor for five years @ $75,000 annually, aggregating $375,000 in Cash saved by the Debtor; upon condition that the Plan is consummated, the Stockholder will retain his Equity Interest while he remains personally liable, in effect, as a surety, in the event that the Debtor fails to pay or otherwise resolve all the Tax Claims against the Debtor.

8.    **Impaired Claims**.

a.    **Class 3**: General Unsecured Claims. Any Ballot returned unsigned without any indication that the voting creditor accepts or rejects the Plan will be deemed a ballot accepting the Plan. Any Ballot returned without an amount will be deemed in the amount set forth on the Debtor's Schedules.

b.    The Holder of an Allowed Class 3 Claim will receive in an amount equal to five percent (5%) of the Face Amount of its Allowed Class 3 Claim distributed at the rate of 1% annually, *pro rata*, in the amount of approximately $8,481.69 beginning on the later of the Effective Date or the Distribution Date for a maximum of five years unless such creditor shall agree with the Debtor to different treatment: the Holder of such Allowed Class 3 Claims may, elect in writing to the Debtor to receive on the Effective Date, a *pro rata* share of a single payment of 2% (or $16,962) of the Allowed Face Amount its Claim on the First Distribution Date.

c.    Distributions to the Holders of Allowed Class 3 Claims shall be made (a) on a date that is 60 days after the Debtor has reduced any judgment to Cash or (b) the date a Class 2 Claim becomes an Allowed Claim pursuant to a Final Order, or shall be paid on such other terms as the Debtor and such Allowed Claim Holders may agree.

d.    No Holder of an Allowed Class 3 General Unsecured Claim shall receive interest on its Allowed Claim, unless expressly authorized by the Plan.

9.    **Allowed Claims**. Notwithstanding any provision herein to the contrary, the Disbursing Agent shall only make Distributions to Holders of Allowed Claims. No Holder of a Disputed Claim will receive any Distribution until (and then only to the extent that) its Disputed Claim becomes an Allowed Claim. Any Holder of a Claim that becomes an Allowed Claim after the Effective Date will receive its Distribution in accordance with the terms and provisions of this Plan.

10.    **Acceptance or Rejection of the Plan**.

a.    **Impaired Classes of Claims Entitled to Vote.** The Holders of Claims in Class 3 are entitled to vote to accept or reject this Plan and the votes of the Holders of those Claims will be solicited.

    b.      **Acceptance by an Impaired Class.** In accordance with §1126(c) of the Bankruptcy Code and except as provided in §1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted this Plan if this Plan is accepted by the Holders of at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class 4 that have timely and properly voted. Class 4 or a subclass thereof, must vote to accept the Plan for Confirmation.

    c.      **Presumed Acceptances by Unimpaired Classes.** Classes 1, 2 and 4 are Unimpaired. Under §1126 of the Bankruptcy Code, the Holders of Claims in Classes 1, 2 and 4 are conclusively presumed to accept this Plan and its votes will not be solicited.

    d.      **Deleted.**

11.    **Means for Implementing the Plan**.
    a.      **Implementing Actions.** Unless otherwise provided in this Plan, on the Effective Date or as soon thereafter as practicable, the following shall occur to implement this Plan: (i) all actions, documents and agreements necessary to implement this Plan shall be taken or executed; the Stockholder will deliver his Contribution and cause the Debtor to deliver its net Cash Inventory proceeds to a segregated account, and (iii) the Disbursing Agent shall make all Distributions required to be made to Holders of Allowed Claims pursuant to this Plan.

    b.      The Debtor will continue to operate the Debtor's Business as a Bar and restaurant at its Premises in Brooklyn after Confirmation of its Plan, in order to generate profits sufficient to pay the quarterly payments to the Allowed Secured and Priority Tax Claimants and will provide continuing quarterly payments and reports of U.S. Trustee's fees as required by the Bankruptcy Code, Trustee's Guidelines and Local Rules. The Debtor will be primarily liable, before the Stockholder, for payment of the IRS Tax Claims, NYSDOTF Sales Tax Claims, and NYC Tax Claims on a monthly basis for 96 consecutive months starting on the Effective Date; in addition, the Debtor shall pay the Class 3 General Unsecured Creditors one percent of their allowed claims in five annual installments, unless Unsecured Claimants opt for a one-time payment of two percent of their allowed Claims.

12.    **Exemption from Certain Transfer Taxes**.
    a.      Pursuant to §1146(a) of the Bankruptcy Code, any transfers from the Debtor or the Trust or any other Entity or to the Trust pursuant to this Plan shall not be subject to any stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state and local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

13.    **Post-Effective Date Costs**.
    a.      From and after the Effective Date and without further order of the Bankruptcy Court, the costs and expenses incurred by the Trustee shall be paid out of the Assets, and the Debtor

or the Disbursing Agent shall pay the fees and expenses of its Professionals in the ordinary course of business including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of this Plan.

**14.** **Preservation of Causes of Action**.

    a.    In accordance with §1123(b)(3) of the Bankruptcy Code and except as otherwise provided in an order of the Bankruptcy Court, the Debtor and its Estate shall retain all of the causes of action arising under applicable state laws, including, without limitation Avoidance Actions, if any, and all other causes of action of a trustee or debtor-in-possession under the Bankruptcy Code.

**15.** **Effectuating Documents**.

    a.    **Further Transactions** The Debtor shall be authorized to execute, deliver, file or record such agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**16.** **Provisions Governing Distributions**.

    a.    **Distributions for Claims Allowed as of the Effective Date.** Except as otherwise provided in this Plan, all Distributions to be made on account of Allowed Claims as of the Effective Date shall begin on the First Distribution Date. Distributions on account of Claims that first become Allowed Claims after the Distribution Date shall be made pursuant to the terms and conditions of this Plan. No Distribution shall be made on account of any Allowed Claim or portion thereof that (i) has been satisfied after the Petition Date pursuant to an order of the Bankruptcy Court; (ii) is listed in the Schedules as contingent, unliquidated, disputed or in a zero amount, and for which a Proof of Claim has not been timely filed; or (iii) is evidenced by a Proof of Claim that has been amended by a subsequently filed Proof of Claim that purports to amend the prior Proof of Claim, except to the extent that the amended Claim is Allowed.

    b.    **Disbursing Agent.** The Stockholder will act as the Disbursing Agent shall make all Distributions required under this Plan or the Confirmation Order, subject to the terms and provisions of this Plan. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of his duties unless otherwise ordered by the Bankruptcy Court or required by the Bankruptcy Code or the Bankruptcy Rules. However, the cost, if any, of any required bond shall be paid out of the Debtor's Assets. The Disbursing Agent shall be authorized and directed to rely upon the Debtor's books and records and its Professionals in determining Allowed Claims entitled to Distribution under this Plan.

    c.    On or as soon as practicable after the Effective Date the Debtor shall turn over to the Disbursing Agent any Cash that constitutes the Contribution. The Disbursing Agent shall establish one or more separate accounts in the name of the Debtor for the payment of the Allowed Class 3 Claims. All such accounts shall be held at banking institutions that are

authorized depositories for the U. S Bankruptcy Court, Eastern District of New York. Allowed Class 3 Claims shall be paid directly by the Debtor as provided in the Plan.

d.      All Cash held by the Disbursing Agent shall be deposited or invested in accordance with §345 of the Bankruptcy Code.

17.    **Delivery of Distributions and Undeliverable or Unclaimed Distributions**.

a.      **Delivery of Distributions in General**. Distributions to Holders of Allowed Claims shall be made (i) at the addresses set forth on the Proofs of Claim filed by the Holders (or at its last known addresses if no Proof of Claim is filed or if the Debtor have been notified of a change of address), (ii) at the addresses set forth in any written notices of address changes delivered to the Debtor or the Disbursing Agent after the date of any related Proof of Claim, (iii) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Debtor have not received a written notice of a change of address or (iv) at the addresses set forth in the records of the Debtor at the time of the Distribution.

b.      Distributions made after the Distribution Date shall be made in accordance with the terms of this Plan.

c.      In making Distributions under this Plan, the Disbursing Agent may rely upon the accuracy of the claims register maintained by the Clerk of the Bankruptcy Court in the Chapter 11 Case, as modified by any Final Order of the Bankruptcy Court allowing or disallowing Claims in whole or in part.

d.      Undeliverable and Unclaimed Distributions. If the Distribution to any Holder of an Allowed Claim is returned to the Disbursing Agent as undeliverable or is otherwise unclaimed, no further Distributions shall be made to such Holder unless and until the Disbursing Agent is notified in writing of the Holder's then-current address, at which time all missed Distributions shall be made to the Holder, without interest.

e.      Amounts in respect of undeliverable Distributions made by the Disbursing Agent shall be returned to and retest with the Debtor until the Distributions are claimed.

f.      Any Holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an undeliverable or unclaimed Distribution within sixty (60) days after the date on which the First Distribution to it is made shall be deemed to have forfeited its Claim for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such Claim or for an undeliverable or unclaimed Distribution against the Debtor and its respective agents, attorneys, representatives, employees or independent contractors, and/or any of its property including the Debtor Assets. In such cases, any Cash otherwise reserved for undeliverable or unclaimed Distributions shall become Debtor Property and shall be distributed in accordance with the terms of this Plan and the Debtor.

g.      Nothing contained in this Plan or the Debtor shall require the Debtor or the Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

18.    **Means of Cash Payment**.

a.      Cash payments made pursuant to this Plan shall be in U.S. dollars and shall be made at the option and in the sole discretion of the Disbursing Agent by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by the Disbursing Agent, which bank shall be an authorized depository in the Eastern District of New York. Cash payments to foreign creditors may be made, at the option of the Disbursing Agent, in such funds and by such means as are necessary or customary in a particular jurisdiction.

b.      Notwithstanding any other terms of this Plan, Claims will be paid only to the extent Allowed.

19.    **Interest on Claims**.

a.      Post-petition interest shall accrue and be paid on any Secured and only on NYSDOTF Priority Tax Claims, and each Holder of such Claims shall be entitled to interest accruing on or after the Petition Date on any such Claim as expressly provided for in this Plan, the Confirmation Order, as may be required by the Bankruptcy Code or as may be required under a separate agreement between such Holder and the Debtor, or either of them. The Debtor has also agreed to pay the IRS "adequate protection" payments of $1,000 per month on its Secured Tax Claims until Confirmation of the Plan and thereafter at the statutory rate of interest on subsequent Plan distributions.

20.    **Withholding and Reporting Requirements**.

a.      In accordance with §346 of the Bankruptcy Code and in connection with this Plan and all distributions hereunder, the Disbursing Agent (as the case may be) shall, to the extent applicable, comply with all withholding and reporting requirements imposed by any federal, state, provincial, local or foreign taxing authority. The Disbursing Agent (as the case may be) shall be authorized to take any and all actions necessary and appropriate to comply with such requirements.

b.      As a condition of making any Distribution under this Plan, the Disbursing Agent may require the Holder of an Allowed Claim to provide such Holder's taxpayer identification number, and such other information, certification or forms as necessary to comply with applicable tax reporting and withholding laws. Notwithstanding any other provision of this Plan, each Entity receiving a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of tax obligations on account of any such Distribution.

21.    **Setoff**.

00039401.14                                    - 18 -

a.  Unless otherwise authorized by a Final Order, any Holder of a Claim must assert any setoff or recoupment rights against a claim by the Debtor against such entity by filing an appropriate motion seeking authority to setoff or recoup on or before the Distribution Date or will be deemed to have waived and be forever barred from asserting any right to setoff against a claim by the Debtor notwithstanding any statement to the contrary in a Proof of Claim or any other pleading or document filed with the Bankruptcy Court or delivered to the Debtor.

22.  **Procedure for Treating and Resolving** Disputed, Contingent and/or Unliquidated Claims.

a.  **Objection Deadline**; Prosecution of Objections. Except as set forth herein with respect to Professional Fee Claims and Administrative Claims, all objections to Claims must be filed and served on the Holders of such Claims no later than the Claims Objection Deadline (as such Deadline may be extended by order of the Bankruptcy Court). If an objection has not been filed to a Proof of Claim or the Schedules have not been amended with respect to a Claim that (i) was Scheduled by the Debtor but (ii) was not Scheduled as contingent, unliquidated and/or disputed, by the Claims Objection Deadline, as the same may be extended by order of the Bankruptcy Court, the Claim to which the Proof of Claim or Scheduled Claim relates will be treated as an Allowed Claim if the Claim has not been allowed earlier.

b.  **No Distributions Pending Allowance**. Notwithstanding any other provision of this Plan, no Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to the Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim. To the extent that a Claim is not a Disputed Claim but is held by a Holder that is or may be liable to the Debtor on account of a Cause of Action, no Distributions shall be made with respect to all or any portion of such Claim unless and until such Claim and liability have been settled or withdrawn or have been determined by Final Order of the Bankruptcy Court or such other court having jurisdiction over the matter.

c.  **Distributions After Allowance**. Distributions to the Holder of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, will be made in accordance with provisions of this Plan that govern distributions to Holders in that Class.

d.  **De Minimis Distributions**. The Disbursing Agent shall not have any obligation to make a Distribution on account of an Allowed Claim if the amount to be distributed to the specific Holder has a value less than five dollars ($5.00).

e.  **Allocation of Plan Distributions Between Principal and Interest**. To the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, the Distribution shall, for all income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the

consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

f. **Distribution Record Date**. Neither the Debtor nor the Disbursing Agent will have any obligation to recognize the transfer of any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes in this Plan to recognize and distribute only to those Holders of Allowed Claims who are Holders as of the close of business on the Distribution Record Date.

23. **Treatment of Executory Contracts and Unexpired Leases**.

a. **Rejected Contracts and Leases**. Except as otherwise provided in the Confirmation Order or this Plan, the Confirmation Order shall constitute an order under §365 of the Bankruptcy Code assuming all prepetition executory contracts and unexpired leases to which either of the Debtor is a party, to the extent such contracts or leases are executory contracts or unexpired leases, on and subject to the occurrence of the Effective Date, unless such contract or lease (a) was previously assumed, assumed and assigned, or rejected by the Debtor, (b) previously expired or terminated pursuant to its own terms on or before the Effective Date, (c) previously expired or terminated by operation of law, including §365 of the Bankruptcy Code, or (d) is the subject of a pending motion to assume or reject on the Confirmation Date.

b. **Rejection Damage Bar Date**. If the rejection of an executory contract or unexpired lease gives rise to a Claim by the counterparty or parties to the contract or lease, the Claim shall be forever barred and shall not be enforceable against the Debtor, the Disbursing Agent or the Debtor's Assets unless a Proof of Claim is filed and served on the Debtor within thirty (30) days after service of a notice of the Effective Date or such other date as is set by the Bankruptcy Court.

24. **Confirmation and consummation of the Plan**.

a. **Conditions to Effective Date**. The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing:

    i. The Confirmation Order shall have been entered and become a Final Order.

    ii. The Confirmation Order shall provide that the Debtor are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the agreements or documents created in connection with this Plan or to effectuate, advance or further the purposes thereof.

    iii. The Confirmation Order shall fix a deadline for the filing of requests for payment Administrative Claims.

iv.      All other actions, documents, and agreements necessary to implement this Plan shall have been effected or executed including, without limitation, the Post-Confirmation Debtor .

v.      The Debtor shall have sufficient Cash, including the proceeds of the Stockholders' Contribution, to enable all required payments necessary to Confirmation to be made including, without limitation, payments to the Debtor.

8.     **Consequences of Non-Occurrence of Effective Date**. If the Effective Date does not timely occur, the Debtor reserve all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated, that this Plan be null and void in all respects, and/or that any settlement of Claims provided for in this Plan be null and void. If the Bankruptcy Court enters an order vacating the Confirmation Order, the time within which the Debtor may assume and assign, or reject all executory contracts and unexpired leases not previously assumed, assumed and assigned, or rejected, shall be extended for a period of 30 days after the date the Confirmation Order is vacated, without prejudice to further extensions.

9.     **Allowance and Payment of Certain Administrative Claims**.

a.      Final Fee Applications. All requests for payment of final Professional Fee Claims must be filed no later than 30 days after the Effective Date.

b.      Objections, if any, to Final Fee Applications must be filed and served on counsel and special counsel for the Debtor, the requesting Professional and the US Trustee no later than thirty (30) days after the date on which the Final Fee Application is served and filed.

c.      After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and Bankruptcy Rules, the Allowed amounts of the Professional Fee Claims shall be determined by the Bankruptcy Court.

10.     **Employment of Professionals after the Effective Date**. From and after the Effective Date, any requirement that Professionals comply with §§327 through 331 of the Bankruptcy Code or any order previously entered by the Bankruptcy Court in seeking retention or compensation for services rendered or expenses incurred after such date will terminate.

11.     **Administrative Claims Bar Date**. All requests for payment of an Administrative Claim arising after the Petition Date other than Professional Fee Claims, those of NYSDOTF or otherwise addressed herein, must be filed with the Court and served on counsel for the Debtor no later than December 22, 2017 at 5:00 p.m.

a.      Unless the Debtor or any other interested party objects within thirty (30) days from and after the Administrative Claims Bar Date, the Administrative Claim shall be deemed allowed in the amount requested.

b.      If the Debtor or any other party in interest objects to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of the Administrative Claim, if any.

12.    **Effect of Plan Confirmation**.

a.      **Binding Effect**. The Plan shall be binding upon and inure to the benefit of the Debtor, all present and former Holders of Claims and its respective successors and assigns.

b.      **Discharge of the Debtor**. Subject to the occurrence of the Effective Date, pursuant to §1141(d)(1) of the Bankruptcy Code, Confirmation shall discharge the Debtor from any Claim that arose prior to Confirmation whether or not the Holder of the Claim has accepted or rejected this Plan, except that (i) pursuant to §1141(d)(2) of the Bankruptcy Code, the Debtor will not be discharged from any debt excepted from discharge under §523 of the Bankruptcy Code and (b) pursuant to §1141(d)(5)(A). Confirmation does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments under this Plan.

c.      **Debtor's Releases**. On the Effective Date, the Debtor, on behalf of themselves and its Estate shall release unconditionally, and hereby are deemed to forever release unconditionally, the Debtor's Professionals from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever (other than the right to enforce the performance of its respective obligations, if any, to the Debtor under this Plan, and the contracts and other agreements delivered under this Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured. known or unknown, foreseen or unforeseen, directly or derivatively, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, this Plan or the Disclosure Statement provided, however, that notwithstanding the foregoing nothing contained herein is intended to or shall operate as a release of any claims for fraud, willful misconduct or gross negligence, criminal conduct, bad faith conduct, and ultra vires actions. The foregoing shall not release and shall not be deemed or construed to release Avoidance Actions or the recipients of any transfers that are avoidable or recoverable under Chapter 5 of the Bankruptcy Code. Pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct, nothing in this Plan shall operate as a release of liability for malpractice for any attorney professional. Nothing in the Plan shall release or exculpate any non-debtor from any liability to the IRS or New York State Department of Taxation and Finance.

d.      **Injunction**. Except as otherwise provided in this Plan, the Confirmation Order shall provide, among other things, that from and after the Effective Date all Persons who have held, hold or may hold Claims against the Debtor are permanently enjoined from taking any of the following actions against the Debtor or its Estate, or any of its property on account of any such Claims:

     i.       Commencing or continuing, in any manner or in any place, any action or other proceeding;

     ii.      Enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order;

     iii.     Creating, perfecting or enforcing any lien or encumbrance;

     iv.     Asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor unless authorized under this Plan; and

     v.     Commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; provided, however, that nothing contained in this Plan shall preclude such Persons from exercising its rights pursuant to and consistent with the terms of this Plan or the Confirmation Order. Exculpation and Limitation of Liability.

e.     Except as otherwise provided in this Plan and to the extent permissible under §1125(e) of the Bankruptcy Code, the Debtor, its Professionals and any of such parties' successors and assigns, shall not have or incur any claim, action, proceeding, Cause of Action, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, right to payment or Claim (as defined in §101(5) of the Bankruptcy Code), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise to one another or to any Holder of a Claim, or any other party in interest, or any of its respective agents, employees, representatives, financial advisors, attorneys, or any of its successors or assigns, for any act or omission originating or occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the Debtor, the Chapter 11 Case, negotiation and filing of this Plan or any prior plans, filing the Chapter 11 Case, the pursuit of confirmation of this Plan or any prior plans, the consummation of this Plan, the administration of this Plan or the property to be liquidated and/or distributed under this Plan, except for fraud, willful misconduct or gross negligence, criminal conduct, bad faith conduct, and ultra vires actions as determined by a Final Order of a court of competent jurisdiction, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities under this Plan. Pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct, nothing in this Plan shall operate as an exculpation or a limitation of liability for malpractice for any attorney professional.

13.    **Term of Bankruptcy Injunction or Stays**.

a.     All injunctions or stays provided for in the Chapter 11 Case under §§105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain

in full force and effect until the Effective Date unless otherwise provided in this Plan. Upon the Effective Date, the injunction provided in Article X. D. shall apply.

14. **Indemnification Obligations**.

    a.    Except as otherwise provided in this Plan, an Order of the Bankruptcy Court or any agreement or document entered into in connection with this Plan, any and all indemnification obligations that the Debtor have pursuant to a contract, instrument, agreement or any other document or applicable law shall be deemed rejected (if and to the extent executory) as of the Effective Date.

15. No Injunctions against the United States Government or The State of New York.

    a.    Nothing in the Plan shall enjoin the United States Government or the State of New York, or any of its agencies, or any state or local authorities from bringing any claim, suit, action or other proceedings (whether directly, indirectly, derivatively or otherwise) against the Debtor or any of its agents, assigns or professionals under the Internal Revenue Code, the environmental laws, securities laws, New York State Tax law or any criminal laws of the United States or any state or local authority.

16. **Retention of Jurisdiction**.

    a.    Under §§105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order, substantial consummation of this Plan and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

    b.    Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim, the resolution of any objections to the allowance or priority of Claims and the determination of requests for the payment of claims entitled to priority under §507(a) of the Bankruptcy Code, including compensation of any reimbursement of expenses of parties entitled thereto;

    c.    Hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under §§330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code; provided, however, that, except as otherwise provided in this Plan, from and after the Effective Date, the payment of the fees and expenses of the Debtor and the Disbursing Agent and its retained agents and employees and Professionals, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

d.  Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

e.  Effectuate performance of and payments under the provisions of this Plan;

f.  Hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under or related to the Chapter 11 Case or this Plan;

g.  Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

h.  Hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

i.  Consider any modifications of this Plan and any implementing documents, cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

j.  Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of this Plan or the Confirmation Order;

k.  Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

l.  Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order or any agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

m.  Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Case;

n.  Hear and determine matters concerning state, local and federal taxes in accordance with §§346, 505 and 1146 of the Bankruptcy Code;

o.  Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

p.   Hear and determine the Avoidance Actions and other Causes of Action;

q.   Hear and determine all disputes involving the existence, nature or scope of the injunctions, indemnification, exculpation and releases granted pursuant to this Plan;

r.   Hear and determine all matters related to the Debtor or the Disbursing Agent;

s.   Hear and determine disputes with respect to compensation of Professionals;

t.   Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

u.   Enforce all orders previously entered by the Bankruptcy Court; and

v.   Enter a Final Decree closing the Chapter 11 Case.

17.   **Miscellaneous Provisions**.

a.   **Modifications and Amendments**. The Debtor may alter, amend or modify this Plan or any Exhibits under §1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of this Plan as defined in §1101(2) of the Bankruptcy Code, the Debtor may, under §1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of this Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under this Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court. No material modifications of the Plan will be made after the Effective Date without notice and an opportunity to object.

b.   **Severability of Plan Provisions**. If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, then the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

c.   **Successors and Assigns**. The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

d.   **Payment of Statutory Fees**. The Debtor shall pay all United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6), plus interest due and payable under 31 U.S.C. §3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtor's business, until the entry of a Final Order, dismissal of the Chapter 11 Case or conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code. Additionally, the Debtor shall file quarterly Post Confirmation Reports and schedule quarterly post-confirmation status conferences with the Court.

e.   **Revocation, Withdrawal or Non-Consummation**. The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date and to file subsequent plans. If the Debtor revokes or withdraws this Plan, or if Confirmation or consummation of this Plan does not occur, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void, and (c) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Entity, (ii) prejudice in any manner the rights of the Debtor or any other Entity or (iii) constitute an admission of any sort by the Debtor or any other Entity.

f.   **Notices**. Any notice, request or demand required or permitted to be made or provided to or upon the Debtor, its counsel and/or the Disbursing Agent under this Plan shall be (a) in writing, (b) served by (i) hand delivery, (ii) overnight delivery service, (iii) first class mail, or (iv) facsimile transmission, (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed and (d) addressed to each of the entities below as follows:

**The Debtor's counsel:**
Randall S. D. Jacobs, PLLC
Attn: Randall S. D. Jacobs, Esq.
30 Wall Street, 11th Floor
New York, New York 10005
Tel: (212) 709-8116
Fax: (973) 226-8897
Email: rsdjacobs@chapter11esq.com

**To the Debtor:**
Akiva Ofshtein, Esq., President
Prime Six, Inc.
15 Bay 29th Street
Brooklyn NY 11214


g.   **Plan Exhibits**. Any and all Plan Exhibits, Disclosure Statement Exhibits or other lists or schedules not filed with this Plan or the Disclosure Statement shall be filed with the Clerk of the Bankruptcy Court at least three (3) Business Days prior to date of the commencement of the Confirmation Hearing. Upon filing, those documents may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours. Holders of Claims may obtain a copy of any such document upon written request to the Debtor's counsel.

h.   **Filing of Additional Documents**. On or before substantial consummation of this Plan, the Debtor shall file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

Dated: New York, New York
       February 13, 2018


/s/ *Akiva Ofshtein*
Akiva Ofshtein
President of the Debtor




RANDALL S. D. JACOBS, PLLC


By: /s/ *Randall S. D. Jacobs*
        Randall S. D. Jacobs
Office and Post Office Address
30 Wall Street, 8th Floor
New York, New York 10005
Tel.: (212) 709-8116
Fax: (973) 226-8897
rsdjacobs@chapter11esq.com
*Attorneys for the Debtor*


00039401.14